CITY OF WAUKESHA, a municipal corporation; Paul Keenan; Theodore Fadrow; and the State of Wisconsin ex rel. City of Waukesha, Paul Keenan, and Theodore Fadrow, Plaintiffs-Respondents,

v.

Sandra SALBASHIAN, Clerk, Town/City of Pewaukee, Brent J. Redford, Chairman, Town/City of Pewaukee, Scott Klein, Michael Hasslinger, Sherman Jacobs, Douglas Ramstack, all as supervisors of the Town/City of Pewaukee; Town of Pewaukee, a body corporate; and Pewaukee City, a purported municipal corporation, Defendants-Appellants.

VILLAGE OF PEWAUKEE, a Wisconsin municipal corporation, Plaintiff-Respondent,

v.

Sandra SALBASHIAN, Clerk, Town/City of Pewaukee, Brent J. Redford, Chairman, Town/City of Pewaukee, Scott Klein, Michael Hasslinger, Sherman Jacobs, Douglas Ramstack, all as Supervisors of the Town/City of Pewaukee; Town of Pewaukee, a body corporate; and Pewaukee City, a purported municipal corporation, Defendants-Appellants.†

---

† Motion for reconsideration denied April 15, 1986, with costs.

Supreme Court

*No. 85–0384. Argued January 7, 1986.—Decided February 24, 1986.*

(Also reported in 382 N.W.2d 52.)

336

For the defendants-appellants there were briefs by
*Richard K. Nordeng* and *Stafford, Rosenbaum, Rieser*

& *Hansen,* Madison, and oral argument by *Mr. Nordeng.*

For the plaintiff-respondent, City of Waukesha, there was a brief by *George E. Lawler,* city attorney, *Gerald T. Janis,* assistant city attorney and *Harold H. Fuhrman,* special counsel, Milwaukee, and oral argument by *Mr. Fuhrman.*

For the plaintiff-respondent, Village of Pewaukee, there was a brief and oral argument by *Timothy P. Garrity,* Milwaukee.

CALLOW, WILLIAM G., J.   This appeal concerns a judgment of the circuit court for Waukesha county, Judge Willis. J. Zick, in which the court ruled that the Town of Pewaukee's attempt to incorporate as a fourth-class city under sec. 60.81, Stats., 1981–82, was invalid because Pewaukee is not adjacent to a first-class city. The court concluded that "adjacent," as used in sec. 60.81, means contiguous. Because Pewaukee is six miles from the city of Milwaukee, the nearest first-class city, the court held that Pewaukee is not adjacent to a first-class city and cannot avail itself of the special incorporation procedures found in sec. 60.81. Pewaukee petitioned to bypass the court of appeals, and we granted the petition. Our review focuses on two questions: (1) Do the plaintiffs, City of Waukesha, Village of Pewaukee, Paul Keenan, and Theodore Fadrow, have standing to challenge the incorporation? (2) If so, does "adjacent," as used in sec. 60.81, mean "contiguous" or "near?" Because we conclude that the plaintiffs have standing to challenge the incorporation and because we construe adjacent to mean contiguous, we affirm the circuit court's judgment.

Section 60.81, Stats., 1981–82, establishes a special incorporation procedure for towns which satisfy certain requirements. Although the legislature renumbered sec. 60.81 as sec. 66.012, Stats., effective May 18, 1984, we will refer to the statute as sec. 60.81 throughout this opinion because the case actually was commenced under sec. 60.81.[1] Specifically, sec. 60.81 re-

---

[1] In 1983 the legislature renumbered sec. 60.81, Stats., as sec. 66.012. *See* 1983 Laws of Wisconsin 532, sec. 11. The renumbering scheme, however, did not result in any change in the language of the statute. Section 60.81, 1981–82, which offers an incorporation procedure distinct from the general incorporation procedures contained in secs. 66.013–66.019, 1983–84, provides as follows:

"**60.81 Towns may become cities. (1)** PETITION. Whenever the resident population of any town exceeds 5,000 as shown by the last federal census or by a census herein provided for and is adjacent to a city of the first class and contains an equalized valuation in excess of $20,000,000 and a petition has been presented and signed by 100 or more persons, each an elector and taxpayer of said town, and, in addition thereto, said petition contains the signatures of at least one-half of the owners of real estate in said town which petition requests submission of the question to the electors of the town and is filed with the clerk of the town, the procedure for becoming a fourth class city is initiated.

(2) REFERENDUM. At the next regular meeting of the town board, said town board by resolution shall provide for a referendum by the electors of said town. The resolution shall observe the requirements of s. 5.15(1) and (2) and shall determine the numbers and boundaries of each ward of the proposed city, the time of voting, which shall not be earlier than 6 weeks after the adoption of said resolution and said resolution may direct that a census be taken of the resident population of such territory as it may be on some day not more than 10 weeks previous to the date of the election, exhibiting the name of every head of a family and the name of every person a resident in good faith of such territory on such

quires the following: The town must have a resident population exceeding 5,000, must have an equalized

day, and the lot or quarter section of land on which he resides, which.shall be verified by the affidavit of the person taking the same affixed thereto.

(3) NOTICE OF REFERENDUM. Notice of the referendum shall be given by publication of the resolution in a newspaper published in such town, if there be one, otherwise in a newspaper designated in the resolution, once a week for 4 successive weeks, the first publication to be not more than 4 weeks before the referendum.

(4) VOTING PROCEDURE. The referendum shall be conducted in the same manner as elections for supervisors of the town board. The question appearing on the ballot shall be 'Shall the town of. . . . become a 4th class city?' Below the question shall appear 2 squares. To the left of one square shall appear the words 'For a city' and to the left of the other square shall appear the words 'Against a city'. The inspectors shall make a return to the clerk of such town.

(5) CERTIFICATE OF INCORPORATION. If a majority of the votes are cast in favor of a city the clerk shall certify the fact to the secretary of state, together with the result of the census if any, and 4 copies of a description of the legal boundaries of the town and 4 copies of a plat thereof, whereupon the secretary of state shall issue a certificate of incorporation, and record the same in a book kept for that purpose. Two copies of the description and plat shall be forwarded by the secretary of state to the department of transportation and one copy to the department of revenue.

(6) CITY POWERS. Every city thus incorporated shall thenceforth be a body corporate and politic, with the powers and privileges of a municipal corporation at common law and conferred by ch. 62.

(7) EXISTING ORDINANCES. Ordinances in force in the territory or any part thereof, so far as not inconsistent with ch. 62, shall continue in force until altered or repealed.

(8) INTERIM OFFICERS. All officers of the town embracing the territory thus incorporated as a city shall continue in their powers and duties as theretofore until the first meeting of the common

valuation exceeding $20,000,000, and must be adjacent to a city of the first-class. In addition, at least one hundred persons who are both electors and taxpayers of the town and who represent more than one-half of the town's real estate owners must sign a petition requesting an incorporation referendum.

On February 20, 1984, residents of the Town of Pewaukee (Pewaukee) filed a petition with the Pewaukee town clerk requesting that proceedings be commenced for the incorporation of the town as a fourth-class city under sec. 60.81, Stats. More than one hundred persons, each an elector and taxpayer of

council at which a quorum is present. Until a city clerk shall have been chosen and qualified all oaths of office and other papers shall be filed with the clerk, with whom the petition was filed, who shall deliver them with the petition to the city clerk when he shall have qualified.

(9) FIRST CITY ELECTION. Within 10 days after incorporation of the city, the board with the clerk of which the petition was filed shall fix a time for the first city election, designate the polling place or places, and name 3 inspectors of election for each place. Ten days' previous notice of the election shall be given by the clerk by publication in the newspapers selected under sub. (3) and by posting notices in 3 public places in the city. Failure to give such notice does not invalidate the election. The election shall be conducted as is prescribed by chs. 5 to 12, except that no registration of voters shall be required. The inspectors shall make returns to the board which shall, within one week after the election, canvass the returns and declare the result. The clerk shall notify the officers-elect and issue certificates of election. If the first election is on the first Tuesday in April the officers so elected shall commence and hold their offices as for a regular term, as shall also their appointees. Otherwise they shall commence within 10 days and hold until the regular city election and the qualification of their successors, and the term of their appointees shall expire as soon as successors qualify."

Pewaukee, representing more than one-half of the owners of real estate in Pewaukee, signed the petition.[2]

With a population of 8,922, as of 1980, and an assessed valuation in excess of $300,000,000, as of 1984, Pewaukee easily satisfied the population and valuation requirements of sec. 60.81, Stats. The people who signed the petition apparently believed that Pewaukee also satisfied the requirement that the town be located "adjacent to a city of the first class," even though it is six miles from Milwaukee, the nearest first-class city.

At its first regular meeting after the filing of the petition, the Pewaukee town board adopted a resolution providing for a sec. 60.81, Stats., incorporation referendum scheduled for April 3, 1984. The referendum was conducted as scheduled. By a margin of 1,160 to 438 the residents of Pewaukee voted to incorporate as a city.

On April 4, 1984, the Pewaukee town clerk certified to the Secretary of State for the state of Wisconsin that a majority of the votes cast were in favor of incorporation and delivered to the Secretary of State four copies of a description of the legal boundaries of Pewaukee. On the same date, the Secretary of State issued and duly recorded a certificate of incorporation in the name of Pewaukee City.

On April 9, 1984, as the interim board began preparing for Pewaukee's first city election, the city of Waukesha (Waukesha) commenced a declaratory judgment action, asking the court to declare the incorpora-

---

[2] The parties later disputed whether the signatures on the petition actually represented one-half of the owners of real estate in Pewaukee. The circuit court did not address this question in its decision, nor was it raised on appeal; therefore, we need not reach it in deciding this case.

tion illegal and to enjoin the members of the board from taking any further action regarding the incorporation of Pewaukee as a city. On April 27, 1984, Waukesha filed an amended complaint, adding a claim for *quo warranto* relief and adding two additional plaintiffs: Paul Keenan, mayor of Waukesha; and Theodore Fadrow, mayor of Franklin and a landowner and taxpayer in Pewaukee. On May 4, 1984, the village of Pewaukee (Village) filed a declaratory judgment action. The suits were consolidated for purposes of scheduling, hearing, and decision.

After hearing oral argument on the parties crossmotions for summary judgment, the circuit court filed its decision on February 4, 1985. The court's decision initially focused on whether the plaintiffs had standing to bring an action challenging the incorporation of Pewaukee. Pewaukee claimed that under sec. 784.04(1)(c), Stats., *quo warranto* is the exclusive method for challenging municipal incorporation. It asserted that the plaintiffs lacked standing to bring a *quo warranto* action. The circuit court, however, concluded that sec. 784.04(1)(c) does not apply to a challenge to the validity of a municipal incorporation. Because the plaintiffs were not precluded from challenging the incorporation through means other than *quo warranto,* the court, relying upon *City of Madison v. Town of Fitchburg,* 112 Wis. 2d 224, 332 N.W. 2d 782 (1983), ruled that the plaintiffs had standing to pursue a declaratory judgment action.[3]

---

[3] Even though the circuit court resolved the standing issue in this manner, the court's opinion continued with a discussion of the exclusivity of *quo warranto* and the standing of the plaintiffs to pursue a *quo warranto* action. The court concluded that *quo warranto* would be the exclusive method for challenging the incorpora-

Next, the court addressed whether adjacent means contiguous or near. Because "adjacent" is not defined in sec. 60.81, Stats., the court undertook a semantical and historical analysis of sec. 60.81 to determine which interpretation of adjacent best serves the legislature's intent. The court found that in enacting sec. 60.81 the legislature expressed concern about annexation by Milwaukee. Because annexation requires contiguity and because the statute is much more precise and less problematic if adjacent is defined as contiguous, the court held that adjacent means contiguous in the context of sec. 60.81.

Having concluded that adjacent means contiguous, the court finally determined that Pewaukee was not adjacent to Milwaukee, the nearest first-class city, because six miles separate their closest boundaries. As a result the court filed its judgment on February 19, 1985, granting the plaintiffs' motions for summary judgment and declaring invalid the incorporation of Pewaukee and the certificate of incorporation which Pewaukee received from the Secretary of State. Because Pewaukee planned to appeal, the circuit court granted Pewaukee's motion for a stay and injunction during the pendency of the appeal.[4]

---

tion if sec. 784.04(1)(c), Stats., were applicable. The court further concluded that the plaintiffs would have standing to sue even in a *quo warranto* action.

[4] During the first few weeks of the proceedings, the parties agreed to a temporary injunction which prevented Pewaukee from holding mayoral and aldermanic elections for city offices and from acting unilaterally on proposed plats within the extraterritorial jurisdiction of Waukesha or the Village and prevented Waukesha and the Village from annexing land from Pewaukee. The injunction which the circuit court granted in February, 1985, essentially

Pewaukee filed a notice of appeal on February 19, 1985. On August 8, 1985, Pewaukee filed a petition to bypass which this court granted on September 10, 1985. This court heard oral argument on January 7, 1986.

Under sec. 802.08(2), Stats., summary judgment is appropriate when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a circuit court's grant of summary judgment, an appellate court applies this same standard. *Kremers-Urban Co. v. American Employers Insurance Co.,* 119 Wis. 2d 722, 733, 351 N.W. 2d 156 (1984). An appellate court must reverse a grant of summary judgment if the record reveals that material facts are in dispute or that a legal issue was decided incorrectly. *Prince v. Bryant,* 87 Wis. 2d 662, 666, 275 N.W. 2d 676 (1979).

In challenging the legality of the incorporation of Pewaukee, Waukesha and the Village primarily rely upon their assertion that Pewaukee is not "adjacent to a city of the first class." They claim that adjacent means contiguous. Because six miles separate Pewaukee from Milwaukee, the nearest first-class city, Waukesha and the Village argue that Pewaukee was not entitled to incorporate under the procedures delineated in sec. 60.81, Stats.

Pewaukee maintains that adjacent means near. It asserts that it satisfies the adjacent requirement precisely because it is only six miles from Milwaukee proper and is within "urbanized, metropolitan Milwaukee" as officially determined by the United States Census Bureau. In addition, Pewaukee contends that Wau-

continued the provisions of the injunction to which the parties previously had agreed.

345

kesha, the Village, and the named individuals lack standing to challenge its incorporation.

## STANDING

If the circuit court was correct in deciding that *quo warranto* is not applicable, then under *City of Madison v. Town of Fitchburg, supra,* the plaintiffs clearly would have standing to challenge Pewaukee's incorporation in a declaratory judgment action. Therefore, standing would not be an issue. If the circuit court was wrong, however, and *quo warranto* is applicable, standing becomes a crucial issue because *quo warranto* generally is an exclusive remedy. If the plaintiffs lack standing to bring a *quo warranto* action when *quo warranto* is the exclusive remedy, they would be precluded from challenging the incorporation in a declaratory judgment action. In deciding whether the plaintiffs have standing to sue, therefore, we initially must focus on whether *quo warranto* is applicable.

The circuit court ruled that sec. 784.04(1)(c), Stats., which authorizes *quo warranto* actions "[w]hen any association or number of persons shall act, within this state, as a corporation without being duly incorporated," does not apply when a party challenges the incorporation of a municipal incorporation, but applies only when a party contests the incorporation of a private corporation. The circuit court based its determination upon its construction of the word "corporation," which appears in both secs. 784.04(1)(c) and 784.04(1)(a). Because the legislature did not define corporation, the court looked to the context of the statutes to determine its meaning. Looking at sec. 784.04(1)(a), the court decided that corporation referred only to private corpora-

tions because that section also provided for *quo warranto* actions against people holding public office. The court stated "[i]f [the legislature] had intended 'corporation' [in sec. 784.04(1)(a)] to include municipal corporations, there would have been no need to refer to 'public office,' since the reference to 'office in a corporation' would have subsumed a public office, i.e., an office in a municipal corporation." Reasoning that corporation should have the same meaning in both sections, the court restricted *quo warranto* actions in sec. 784.04(1)(c) to actions against private corporations.

Questions of statutory interpretation are questions of law. When reviewing questions of law, this court need not defer to the lower courts' reasoning. *Milwaukee Metropolitan Sewerage District v. DNR*, 126 Wis. 2d 63, 71, 375 N.W. 2d 648 (1985). Pewaukee argues that interpreting the word corporation to include a public or municipal corporation does not make the phrase public office redundant in sec. 784.04(1)(a), Stats. Several state officials hold public office without being members of a public or municipal corporation. We find Pewaukee's reasoning persuasive. Because the word corporation generally encompasses both public and private corporations, a circuit court should conclude that the legislature intended a more restrictive meaning only if it can find a substantial basis in the context of the statute to support the restrictive interpretation. We conclude that the circuit court's reason for construing corporation in a restrictive fashion was inadequate to overcome the usual meaning of corporation because it relied upon a strained interpretation of the statute. Accordingly, we hold that the circuit court erred in giving corporation a restrictive meaning and

in concluding that *quo warranto* was not an available remedy in this case.

Having determined that *quo warranto* is available as a remedy in this case, we must decide whether it is the exclusive remedy available to the plaintiffs. Our earlier decisions in *Boerschinger v. Elkay Enterprises, Inc.,* 26 Wis. 2d 102, 132 N.W. 2d 258, 133 N.W. 2d 333 (1965), and *Henning v. Waterford,* 78 Wis. 2d 181, 253 N.W. 2d 893 (1977), clearly establish that *quo warranto* relief is an exclusive remedy, except when the issue warranting *quo warranto* relief is ancillary to an issue that does not sound in *quo warranto.*

In this case the only issue the plaintiffs raise concerns the validity of Pewaukee's incorporation. This issue is not ancillary to any other issue because it is the only substantive issue the parties are contesting. Accordingly, our decision in *Henning* dictates that *quo warranto* is the exclusive remedy.

Having concluded that *quo warranto* is the exclusive means by which the plaintiffs can challenge the incorporation, we must ascertain whether the plaintiffs have standing to pursue a *quo warranto* action. Pewaukee argues that neither the municipal plaintiffs nor the individual plaintiffs have standing to sue in *quo warranto.*

Section 784.04(2), Stats., provides that a "private person" may commence a *quo warranto* action. With regard to the municipal plaintiffs, Pewaukee acknowledges that municipalities are included within the definition of person found in sec. 990.01(26). Pewaukee contends, however, that the word "private" qualifies the class of persons who may commence a *quo warranto* action and excludes municipal corporations from the eligible class of persons. To explain this qualification,

348

Pewaukee draws an analogy to the general rule that a municipality, as a creature of the legislature, lacks the legal capacity to challenge the actions of its creator. *See Fitchburg,* 112 Wis. 2d at 240.

Pewaukee's rationale possesses only superficial merit. In reality, the municipalities in this *quo warranto* suit are not challenging any action which the legislature has taken; they are challenging an action which Pewaukee has taken. In pursuing this *quo warranto* suit, therefore, the municipalities will not be in conflict with their creator—the legislature. Indeed, as plaintiffs in a *quo warranto* action, the municipalities are bringing suit in the name of the state. Section 784.04(2), Stats.

In determining whether the municipalities are proper private plaintiffs for a *quo warranto* action, a court's analysis must be couched in terms of injury and interest, not semantics. In *State ex rel. First National Bank v. M & I People Bank,* 95 Wis. 2d 303, 311, 290 N.W. 2d 321 (1980), we defined the appropriate test for private persons. A relator "must show that he has sustained or is in danger of sustaining injury as a result of the challenged action, and he must show a special interest. It is not sufficient that the relator has merely a general interest common to all members of the public." *Id.* We added, " '[i]f there is any preponderance of authority on this question, it is to the effect that only a slight interest is necessary to qualify a person to apply for leave to prosecute the action.' " *Id.* at 313.

Accordingly, the phrase "private person" in sec. 784.04(2), Stats., does not inherently preclude municipal corporations from maintaining a *quo warranto* action. Under the test delineated in *State ex rel. First National Bank,* municipal corporations are precluded

from prosecuting a *quo warranto* action only if they lack a special interest, which is susceptible to injury, in the subject matter of the suit.

In some cases a municipal corporation may have only the same interest as the public at large. *See, e.g., Ashwaubenon v. State Highway Commission,* 17 Wis. 2d 120, 127–28, 115 N.W. 2d 498 (1962). In *Fitchburg,* however, we specifically recognized that a municipality may have a legally protectible interest sufficient to enable it to challenge an attempted municipal incorporation. 112 Wis. 2d at 228–29. Although *Fitchburg* was a declaratory judgment action, we applied a test for standing quite similar to that expressed in *State ex rel. First National Bank.* We stated that standing required " a personal stake in the outcome of the controversy." *Fitchburg,* 112 Wis. 2d at 228. We ruled that the city of Madison had standing to challenge Fitchburg's incorporation because Fitchburg's incorporation would affect Madison's special interest in its future growth by precluding future annexation and by extinguishing Madison's extraterritorial zoning and plat approval jurisdiction in the Fitchburg area. *Id.* at 230–32.

Because Pewaukee's incorporation would affect the interests of Waukesha and the Village in the same manner as Fitchburg's incorporation affected the interests of Madison, we conclude that both Waukesha and the Village have special interests in this case which are in danger of sustaining injury. Accordingly, we hold that both Waukesha and the Village have standing under sec. 784.04(2), Stats, to bring a *quo warranto* action contesting the validity of Pewaukee's incorporation.

Turning to the issue of the standing of the individual plaintiffs, we find that the circuit court correctly

concluded that Paul Keenan, mayor of Waukesha, derives his standing entirely from Waukesha. Accordingly, we focus our attention on Theodore Fadrow's standing to bring a *quo warranto* action. Again we apply the test from *State ex rel. First National Bank.* Fadrow has standing to commence a *quo warranto* action if he has an interest which is distinct from that of the general public. *State ex rel. First National Bank,* 95 Wis. 2d at 313.

Fadrow is a nonresident property owner in Pewaukee. As a property owner, he is also a taxpayer in Pewaukee. This court long ago recognized that a landowner-taxpayer has a pecuniary interest which is affected by incorporation. In *State ex rel. Weinsheim v. Leischer,* 117 Wis. 475, 477–78, 94 N.W. 299 (1903), this court expressly acknowledged that the pecuniary interest of a landowner-taxpayer is sufficient to confer standing in a *quo warranto* action. Accordingly, we hold that Fadrow has a sufficient personal interest under sec. 784.04(2), Stats., to maintain a *quo warranto* action challenging Pewaukee's incorporation.

## *ADJACENT*

Having decided the standing question in favor of the plaintiffs, we must address the plaintiffs' substantive challenge to Pewaukee's incorporation: Is Pewaukee "adjacent" to a city of the first class? To answer this question we must give meaning to the word adjacent as it is used in sec. 60.81, Stats. The purpose of statutory interpretation is to ascertain and give effect to the legislative intent. To determine legislative intent, the court must look to the language of the statute. If the statute is ambiguous, the court may look to

the scope, history, context, subject matter, and object of the statute to determine legislative intent. *Milwaukee Metropolitan Sewerage District v. DNR*, 126 Wis. 2d at 71.

The plaintiffs urge the court to construe adjacent narrowly to mean contiguous.[5] Pewaukee urges the court to construe adjacent broadly to mean near. *Webster's Third New International Dictionary*, 26 (1966), defines adjacent as "1 a : not distant or far off . . . : nearby but not touching . . . b : relatively near and having nothing of the same kind intervening : having a common border : abutting, touching. . . ." From the language of the statute, it is not clear which meaning the legislature intended to give to the word adjacent. Because of this ambiguity, we must determine the legislature's intent in creating the special incorporation procedures in sec. 60.81, Stats., and define adjacent in a manner consistent with the legislative intent.

The plaintiffs contend that the legislature was primarily concerned with annexation by first-class cities when it created these special incorporation procedures. According to the plaintiffs, sec. 60.81, Stats., is designed to offer towns and villages threatened with annexation an easier method of incorporating and preserving community identity. Because annexation requires contiguity, the plaintiffs maintain that adjacent should be defined as contiguous. Pewaukee argues that the legislature was primarily concerned with the

---

[5] In *Webster's Third New International Dictionary*, 492 (1966), contiguous is defined as follows: "1 a (1): touching along boundaries often for considerable distances . . . (2) *of angles:* adjacent 2b: next or adjoining with nothing similar intervening . . . c: nearby, close: not distant . . ." For the purposes of this decision, we define contiguous as touching or adjoining.

effects of urbanization in towns and villages near first-class cities when it enacted sec. 60.81. Pewaukee claims the legislature perceived that towns and villages affected by urbanization require a city form of government to cope with the problems of urbanization. Because the demands of urbanization do not result from contiguity, Pewaukee asserts that adjacent should be defined as near.

*Fitchburg* is the only decision in which this court has discussed the purpose of sec. 60.81, Stats.

"For more than a decade following World War II, urban areas throughout the United States experienced vast increases in population. The Milwaukee metropolitan area grew rapidly during this period, resulting in a wave of annexations, incorporations, and consolidations. These changes often resulted in 'jigsaw' boundary lines and caused numerous disputes between neighboring municipalities. Residents of towns adjacent to Milwaukee frequently resisted the city's annexation efforts. To preserve their local government and community identity, many towns sought to incorporate. The conflict between these suburban incorporation attempts and Milwaukee's annexation efforts resulted in a great deal of costly, protracted litigation and uncertainty. Meanwhile, as the population of these suburban areas increased, the local governments were faced with new problems. However, their rural-oriented town government system was not properly equipped to handle the effects of urbanization. A city government structure was needed.

"In an effort to quickly solve the problems stemming from Milwaukee's rapid growth, local government officials from areas such as the town of Oak Creek worked to change the laws governing incorpora-

tion. As a result, sec. 60.81, Stats., which is sometimes called the Oak Creek law, was enacted in 1955. Sec. 60.81 was designed to bring stability, certainty, and an end to the bickering and litigation between Milwaukee and the contiguous towns. In order to accomplish these objectives, the statute provided a special incorporation mechanism for such suburban communities."

*Fitchburg,* 112 Wis. 2d at 238 (footnotes omitted).

Our discussion in *Fitchburg* of the background of sec. 60.81, Stats., lends support to each party's interpretation of the legislature's intent and the statute's purpose. The more compelling explanation for the enactment of sec. 60. 81, however, is the legislature's concern about annexation pressures from first-class cities, specifically Milwaukee, rather than its concern about the need for a city form of government in communities near Milwaukee experiencing the effects of urbanization. Urbanization poses problems for communities throughout the state, not just for communities near Milwaukee. Nonetheless, the general incorporation procedures contained in secs. 66.013–66.019, Stats., place more stringent requirements for incorporation on communities near metropolitan centers to avoid the creation of governmental units lacking sufficient area or population to supply necessary services and to perform necessary functions in an economically efficient manner. *Scharping v. Johnson,* 32 Wis. 2d 383, 397, 145 N.W. 2d 691 (1966). These greater restrictions on communities near metropolitan centers also were designed to prevent fragmentation of an urban area in which multiple incorporations would hinder the resolution of governmental problems affecting the entire metropolitan community. *Id.*

Were we to conclude that the legislature intended adjacent to have the broad meaning Pewaukee advocates, it would be nearly impossible to reconcile the more restrictive requirements found in secs. 66.013–66.019, Stats., with the generally less stringent requirements of the alternative method of incorporation found in sec. 60.81. To reconcile sec. 60.81 with secs. 66.013–66.019, we must perceive sec. 60.81 as a unique legislative approach to a discrete problem—annexation by Milwaukee—and must construe it narrowly. Because annexation requires contiguity, *see* sec. 66.021(2), we hold that the legislature, in enacting sec. 60.81, intended that adjacent be defined as contiguous.

Applying our construction of sec. 60.81, Stats., to the facts of this case, we hold that the circuit court properly invalidated Pewaukee's incorporation because Pewaukee, located six miles from Milwaukee, is not adjacent to a city of the first class and, therefore, cannot incorporate under the special incorporation provisions contained in sec. 60.81. Accordingly, we affirm the circuit court's grant of summary judgment in favor of the plaintiffs. Because of our disposition of this question, we need not address the other issues raised by the parties.

*By the Court.*—The judgment of the circuit court in favor of the City of Waukesha and the Village of Pewaukee is affirmed.