Jeffrey B. TENPAS and Barbara J. Tenpas,
Plaintiffs-Respondents,

v.

DEPARTMENT OF NATURAL RESOURCES,
Defendant-Appellant.†

Court of Appeals

*No. 86–1430. Submitted on briefs July 20, 1987.—Decided
September 24, 1987.*

(Also reported in 415 N.W.2d 853.)

---

† Petition to review pending. This petition was not decided at
the time the volume went to press. Its disposition will be reported in a
later volume.

For the defendant-appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Maryann Sumi,* assistant attorney general.

For the plaintiffs-respondents the cause was submitted on the brief of *Byron C. Crowns* and *Crowns, Midthun, Metcalf & Quinn S.C.,* of Wisconsin Rapids.

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J.   The Department of Natural Resources (DNR) appeals from a summary judgment declaring that sec. 94.26, Stats., exempts cranberry growers from compliance with sec. 710.11, Stats., which, by incorporating the provisions of sec. 31.14(4), Stats., requires purchasers of lands on which dams are located to provide the department with proof of financial responsibility. We reverse.

Jeffrey and Barbara Tenpas purchased land on which two dams were located. At all pertinent times the property has been devoted to cranberry production. Section 710.11, Stats., provides that "[a] person may not accept the transfer of the ownership of a specific piece of land on which a dam is physically located unless the person complies with s. 31.14(4)." Insofar as it is applicable here, sec. 31.14(4), Stats., requires the transferee of any such land to furnish DNR with proof of his or her financial ability to maintain the dam in good condition.

Section 94.26, Stats., known as the "cranberry law," specifically authorizes owners of lands "adapted to the culture of cranberries" to "build and maintain ... such dams ... as shall be necessary for the purpose of flowing [the] lands." Believing that sec. 94.26 made sec. 710.11, Stats., inapplicable to the purchased lands, the Tenpases failed to comply with the financial responsibility provisions of sec. 31.14(4), Stats. They later sought declaratory relief under sec. 806.04, Stats., requesting that the court determine whether sec. 94.26 exempts them and all other cranberry growers from the requirements of sec. 710.11. They moved for summary judgment, and the trial court granted the motion.

The issue is one of statutory interpretation—the application of secs. 94.26 and 710.11, Stats., to simple, undisputed facts.[1] It is a question of law which we

---

[1]The dissenting opinion begins with the surprising statement that we are "constru[ing] the wrong statute." We believe that resort to the language of our opinion belies that statement. As we state, sec. 710.11, Stats., by requiring compliance with sec. 31.14(4), Stats., incorporates the terms of that section into its own provisions.

review *de novo,* without deference to the trial court's determination or rationale. *City of Waukesha v. Salbashian,* 128 Wis. 2d 334, 347, 382 N.W.2d 52, 56 (1986). The goal of statutory interpretation is to give effect to the intent of the legislature, and our first resort is to the language of the statute. *Id.* at 351, 382 N.W.2d at 58. We will look beyond that language, resorting to the legislative history, context, subject matter, or object of the statute, in order to ascertain the legislative intent only if its wording is ambiguous or unclear. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 538, 345 N.W.2d 389, 394 (1984). We see no ambiguity or lack of clarity in sec. 710.11, Stats., nor do we see any conflict between that section and the cranberry law.

Section 94.26, Stats., authorizes cranberry growers to build and maintain dams in aid of cranberry production. Section 710.11, Stats., has nothing to do with the construction or operation of dams, and it imposes no limitations or restrictions on the growers' ability to carry on those activities. It simply requires, upon transfer of ownership of dams, that the new owners file proof of their financial ability to maintain them. There is nothing on the face of sec. 710.11 that would prohibit or in any way restrict the activities permitted by sec. 94.26.

Nor are the objectives of the two statutes in conflict. Section 710.11, Stats., does no more than establish a mechanism for the orderly transfer of dams. The manifest objective of the statute is to protect adjoining landowners and the general public from the consequences of dam failures by assuring that purchasers of dams are able to adequately maintain them. Section 94.26, Stats., on the other hand, is an obvious encouragement to cultivation of

cranberries in Wisconsin; and sec. 710.11 neither contravenes nor detracts from that purpose. We are satisfied that the two statutes can be construed together, giving full effect to each.

The Tenpases argue, however, that a contrary result is dictated by *State v. Zawistowski,* 95 Wis. 2d 250, 290 N.W.2d 303 (1980). In that case the court considered whether sec. 94.26, Stats., absolved cranberry growers of the necessity to obtain permits to divert water from navigable lakes and streams, as required by sec. 30.18, Stats. (1973). The court held that the language of sec. 94.26 permitting growers to construct such "dams ... drains and ditches" as may be necessary to flood and drain their lands must, of necessity, also allow them to divert water onto their lands. The court reasoned that "[i]t would be unreasonable to construe sec. 94.26 to allow only the construction of the means to divert water without allowing the actual diversion." *Id.* at 261, 290 N.W.2d at 309.

We do not consider *Zawistowski* to be controlling. Unlike the situation that existed there, both sec. 94.26 and 710.11, Stats., may be given full effect without giving rise to conflict or suggesting an unreasonable result. As the *Zawistowski* court noted, if the right to divert water is lacking, the right to build dams, dikes, and ditches to flow the lands is meaningless. But the growers' right to build and maintain dams in aid of cranberry production is wholly independent of, and unrelated to, the state's interest in providing modest regulation of transfers of dam ownership—requiring proof of the transferee's financial ability to maintain the dam.

The Tenpases suggest, however, that sec. 710.11, Stats., is much more than a modest regulation. They

assert that if we declare its terms applicable to cranberry dams, we will subject growers to the entire panoply of DNR's regulatory authority over navigable waters and dams. The argument, adopted by the dissent, is based on an overly-broad and strained reading of the statutes.

As indicated, sec. 710.11, Stats., requires persons acquiring dams to comply with sec. 31.14(4), Stats. Sec. 31.14(4), in turn, states that transfers of dam ownership are void if made without complying with secs. 31.14(2) and (3). The latter sections impose the proof of financial responsibility requirements.

The Tenpases seize upon an ancillary reference in sec. 31.14(2), Stats., to other portions of ch. 31[2] and suggest that those other regulations are also incorporated in sec. 710.11, Stats. The result, according to the Tenpases, is to make the entire chapter—and perhaps ch. 30 as well—applicable to cranberry growers, thus wholly negating the cranberry law.

We disagree. By its plain language, sec. 710.11, Stats., incorporates only sec. 31.14(4), Stats; and the latter statute refers only to the specific financial responsibility requirements of secs. 31.14(2) and (3). None of the three incorporates any other statutory provisions. The unrelated reference to other portions of ch. 31 in an introductory sentence in sec. 31.14(2)

---

[2]Section 31.14(2), Stats., begins:

Except as provided in sub. (3), a permit shall not be granted under s. 31.06, 31.08 or 31.13:
(a) Unless the applicant furnishes to the department proof of ability to operate and maintain the dam in good condition . . . .

Sections 31.06 and 31.08 govern hearings on applications for permits to construct dams, and sec. 31.13 governs amendments to existing dam permits to allow the raising or enlarging of dams.

does not, as the Tenpases maintain, bring any other provisions of ch. 31 into play.

Section 710.11, Stats., incorporates only the financial responsibility provisions of secs. 31.14(2), (3) and (4), Stats; it goes no further than that. The statute is clear on its face and its existence side-by-side with the cranberry law creates neither ambiguity nor conflict. As a result, we need not look outside the two statutes to conclude, as we do, that they may coexist as written.[3]

Finally, DNR asks that we impose a penalty against the Tenpases for violating sec. (Rule) 809.23(3), Stats., prohibiting citation of unpublished appellate decisions except in specified circumstances. They did refer to an unpublished opinion in their brief, but we do not believe it was cited as precedent. It simply illustrates a particular point. We decline to assess a penalty.

---

[3]Even if the two statutes, read together, could be considered ambiguous, their legislative history would lead us to the same result.

The explanatory note published with sec. 710.11, Stats., describes its purpose as promoting the accuracy of DNR's records of Wisconsin dams, and improving the department's dam safety program. As we have said, we see no conflict between the financial responsibility requirement upon transfer of dams and the growers' rights to build and maintain them under the cranberry law. Indeed, the legislative history shows sec. 710.11 to be a statute promoting public safety and welfare—precisely the type of law the supreme court has said is superior to the growers' rights under sec. 94.26, Stats. *Cranberry Creek D. Dist. v. Elm Lake C. Co.*, 170 Wis. 362, 367, 174 N.W. 554, 556 (1920).

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment dismissing the action.[4]

SUNDBY, J. (*dissenting*). Because neither sec. 710.11, Stats., nor sec. 31.14, Stats., applies to cranberry dams, I dissent.

My first disagreement with the majority is that it construes the wrong statute. It treats sec. 710.11, Stats., as creating a duty in purchasers of lands on which dams are located to provide the department of natural resources with proof of financial responsibility. In fact, sec. 710.11 is a notice statute. It provides:

> A person may not accept the transfer of the ownership of a specific piece of land on which a dam is physically located unless the person complies with s. 31.14(4).

Section 710.11, Stats., was created to give notice of the substantive provisions of sec. 31.14(4), Stats., especially to persons working in professions and occupations concerned with title to real estate. Explanatory Note, Wisconsin Legislative Council Law Revision Committee sec. 5, ch. 246, Laws of 1981. When sec. 710.11 was created, sec. 31.14(4) already provided that no person may assume ownership of a dam without complying with the proof-of-ability-to-maintain requirements of sec. 31.14(2) or (3). Transfer of ownership of a dam without complying with sec. 31.14(2) or (3) was void without a permit to abandon or

---

[4]DNR did not move for summary judgment. Where, however, we conclude, as we do here, that the non-moving party is nonetheless entitled to judgment as a matter of law, we may direct the entry of such a judgment. *Delmore v. American Family Mut. Ins. Co.,* 118 Wis. 2d 510, 512–13, 348 N.W.2d 151, 152–53 (1984).

unless a transfer of ownership occurred by operation of law.[1] The statute whose application to cranberry dams we must determine is, therefore, not sec. 710.11 but sec. 31.14(4).

Section 31.14, Stats.,[2] was created by sec. 6, ch. 568, Laws of 1961. As enacted, sub. (4) provided:

---

[1] The first sentence of sec. 31.14(4), Stats., applies to the person assuming ownership of a dam (and, after April 27, 1982, to the person assuming ownership of the land on which a dam is located) which, it is contemplated, will continue in operation. The second sentence declares void a transfer of a dam which will continue in operation unless sub. (2) or (3) is complied with, unless the transfer occurs by operation of law. However, if the dam is being abandoned, sub. (2) or (3) does not apply and the owner must obtain a permit to abandon under sec. 31.185.

[2] Section 31.14, Stats., provides:

(1) It is the policy of this section to preserve public rights in navigable waters, including those created by dams, and to provide a means of maintaining dams and the developments which have been made adjacent to the flowage of such dams.

(2) Except as provided in sub. (3), a permit shall not be granted under s. 31.06, 31.08 or 31.13:

(a) Unless the applicant furnishes to the department proof of ability to operate and maintain the dam in good condition, either by the creation of a special assessment district under ss. 31.38 and 66.60, or by any other means which in the department's judgment will give reasonable assurance that the dam will be maintained for a reasonable period of time not less than 10 years; or

(b) If a majority of the municipalities in which 51% or more of the dam or flowage is or will be located files with the department, prior to the granting of the permit, their objections to the granting of such permit in the form of resolutions duly adopted by the governing bodies of such municipalities.

(3) Subsection (2) does not apply if the applicant complies with each of the following requirements:

(a) Furnishes proof satisfactory to the department that he owns or has an enforceable option to purchase all the land which is or will be flowed by the impoundment, together with the shore

No person shall assume ownership of any dam after October 21, 1961, without first complying with sub. (2) or (3). Every transfer of the ownership of a dam made without so complying is void unless a permit to abandon the dam has been granted or unless the transfer occurred by operation of law. Every person who accepts ownership by operation

line and an immediately adjacent strip of land at least 60 feet in width, but the department may in a particular case permit a narrower strip where the 60-foot minimum is impractical and may, in furtherance of the policy stated in sub. (1), require ownership of a wider strip.

(b)   Files with the department a writing in such form as the department requires in which he agrees that following the initial filling of the proposed pond he will not convey the dam to another without first obtaining department approval. The department may require from an applicant who does not have the power of eminent domain a bond or other reasonable assurances that he will adhere to such agreement.

(c)   Furnishes proof satisfactory to the department that he has dedicated or will dedicate a parcel of land for public access to the impounded waters.

(4)   No person may assume ownership of a dam after October 21, 1961, or the ownership of that specific piece of land on which a dam is physically located after April 27, 1982, without first complying with sub. (2) or (3). The transfer of the ownership of a dam or the ownership of a specific piece of land on which a dam is physically located made without complying with sub. (2) or (3) is void unless a permit to abandon the dam was granted under s. 31.185 or unless the transfer occurred by operation of law. Every person who accepts ownership by operation of law is subject to this chapter.

(5)   For the purpose of implementing the policy stated in sub. (1), the department may by rule require all or specified classes of persons operating a dam for profit to create a fund or reserve to be used for major repairs, reconstruction or removal of the dam when necessary. Such rules shall prescribe the manner in which such fund or reserve is to be created, maintained and expended. This subsection shall not apply to a person who has the power of eminent domain.

of law is subject to the requirements of this chapter.

Sec. 6, ch. 568, Laws of 1961.

The primary source of construction of a statute is the language of the statute itself. *Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 419, 405 N.W.2d 354, 363 (Ct. App. 1987). Read in isolation, sec. 31.14(4), Stats., could be construed to apply to "any dam," including cranberry dams. However, since sec. 31.14 was enacted as an integrated statute, sub. (4) must be read with the other subsections of sec. 31.14. *See State v. ILHR Department,* 101 Wis. 2d 396, 403, 304 N.W.2d 758, 762 (1981). Each subsection cannot be read and understood as a series of separate statutes but must be viewed as a cohesive enactment. *See McGarrity v. Welch Plumbing Co.,* 104 Wis. 2d 414, 427, 312 N.W.2d 37, 43 (1981).

Section 31.14(4), Stats., requires compliance with either sub. (2) or (3) of sec. 31.14. The introductory paragraph of sub. (2) is: "Except as provided in sub. (3), a permit shall not be granted under s. 31.06, 31.08 or 31.13 ... unless ...." One reasonable construction of sec. 31.14(4) is that its application is limited to dams for which permits are required under secs. 31.06, 31.08 or 31.13.[3] This construction is supported by the language of subs. (2) and (3). Subsection (2)(a) permits the

---

[3]Section 31.06, Stats., prescribes the hearing procedure on an application by a person, firm, corporation or municipality desiring a permit to construct, operate and maintain a dam. Section 31.08 prescribes the hearing procedure on an application under sec. 31.07 by a person, firm, corporation or municipality desiring a permit to operate and maintain a dam existing before July 10, 1915. Section 31.13 prescribes the procedure by which the owner of an existing dam may raise or enlarge the same, upon permit issued by the department.

dam owner to provide proof of ability to maintain a dam by creation of a special assessment district under sec. 31.38 and sec. 66.60, Stats., or an alternative means which will assure maintenance of the dam for ten years. Only municipalities may create special assessment districts. In view of the linkage of the alternative means with the preceding clause by the word "or" I conclude that sub. (2)(a) applies only to municipalities with the power to create special assessment districts. Subsection (2)(b) contains a procedure by which municipalities may object to the granting of a permit under secs. 31.06, 31.08 or 31.13. Subsection (3) provides that sub. (2) does not apply if the applicant for a permit under sec. 31.06, 31.08 or 31.13(a) furnishes proof of ownership (or option to purchase) of the land to be flowed by the impoundment and additional land, (b) agrees not to convey the dam without department approval, and (c) furnishes proof to the department that the applicant has dedicated or will dedicate land for public access to the impounded waters. These provisions cannot, realistically, be applied to cranberry dams which are not owned by municipalities and do not create ponds or extensive impoundments to which it would be in the public interest to provide access. I conclude that the language of the statute establishes that sec. 31.14 does not apply to cranberry dams.

I am prepared, however, to concede for purposes of argument that reasonably well-informed persons could differ as to the construction of sec. 31.14(4), Stats. The statute is therefore ambiguous, and we may resort to extrinsic aids to determine the legislature's intent. *State v. Vonesh*, 135 Wis. 2d 477, 480, 483, 401 N.W.2d 170, 172, 173 (Ct. App. 1986).

Administrative construction of a statute by the agency charged with its administration is an aid to determining legislative intent when the construction is long-standing and is acquiesced in by the legislature. *State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 504, 261 N.W.2d 434, 440 (1978). The affidavit of the chairman of the Wisconsin Cranberry Growers Association water and wetland committee advises that the public service commission (the predecessor to the department) in Docket #2–WP–2177 recognized the right of cranberry growers to build and maintain dams without obtaining permits from the public service commission.

The affidavit in support of the Tenpases' motion for summary judgment by the attorney for the Wisconsin Cranberry Growers Association (also the attorney for the Tenpases in this litigation) represents that prior to April 1, 1980, the department and its predecessor agencies informed cranberry growers that because of the provisions of sec. 94.26, Stats., they were not required to obtain permits under chs. 30 and 31, Stats.

In opposition to the Tenpases' motion for summary judgment, the department filed the affidavit of Richard J. Knitter, who was employed as a field engineer for the water regulation section of the public service commission from 1962 to 1971. Since 1971 he has been the assistant chief of the water regulation section of the bureau of water regulation and zoning of the department. His affidavit avers that his duties include administration of chs. 30 and 31, Stats., and the administration and inspection of dams. His affidavit does not dispute the assertion in Tenpases' affidavits that cranberry growers are not required to obtain a permit from the department to build or maintain a

cranberry dam. Nor does the department in its briefs take issue with this assertion. In fact, the department's brief acknowledges that sec. 94.26, Stats., provides the statutory basis for the building and maintenance of dams in furtherance of the culture of cranberries.

While administrative construction is useful in determining legislative intent, "[o]ne of the most valuable extrinsic aids of judicial construction is legislative history." *Vonesh,* 135 Wis. 2d at 483, 401 N.W.2d at 173.

Section 31.14, Stats., was the product of the work of the water resources committee of the Wisconsin legislative council. The minutes of its meetings reveal that the concern addressed by the committee was the abandonment of dams by power companies. *See* 6 *Wisconsin Legislative Council and Council Committees 1959–61,* Minutes of the Water Resources Committee (Legislative Reference Bureau). No concern is expressed respecting the abandonment of cranberry dams.

The new law also created sec. 31.185, Stats. (1961), requiring a permit from the public service commission in order for the owner to abandon, remove, alter or transfer ownership of a dam. Thus, the legislature addressed the problem causing concern in two ways. First, a person assuming ownership of a dam after October 21, 1961 was required to file proof with the commission of ability to maintain the dam. Second, no owner of a dam could abandon, remove, alter, or transfer ownership of such dam without obtaining a permit therefor from the commission. Section 31.185(5) (1961) conferred broad authority upon the commission to impose conditions as a prerequisite to the granting of a permit under the section. Except for

the 1982 amendments, which I shall discuss hereafter, and reference changes, secs. 31.14 and 31.185 have not been amended in any material respect since enacted in 1961.

Where statutes of direct and immediate linkage are enacted in the same legislation, they must be considered *in pari materia* and harmonized if possible. *State v. ILHR Department,* 101 Wis. 2d at 403, 304 N.W.2d at 762; *Nelson v. DNR,* 88 Wis. 2d 1, 5 n. 3, 276 N.W.2d 302, 304 (Ct. App. 1979), *aff'd,* 96 Wis. 2d 730, 292 N.W.2d 655 (1980). If we hold, as does the majority, that sec. 710.11, Stats., makes sec. 31.14(4), Stats., applicable to cranberry dams, we must hold that sec. 31.185, Stats., applies to such dams. Such a construction exposes the owners of such dams to broad permitting and regulatory powers of the department.[4]

We are presented with a situation in which the legislature enacted "linked" statutes to deal with a specific problem, i.e., the abandonment of major dams by power companies. The administrative construction has been that those statutes do not apply to cranberry dams built and maintained under sec. 94.26, Stats. The department now seeks to exercise authority which it has heretofore acknowledged it did not possess on the basis of a "minor substantive remedial measure[ ] ... to improve the administration of [the agency]." Sec. 13.83(1)(c)4, Stats. At the request of the department, the law revision committee introduced

[4]The majority's conclusion that its construction of sec. 710.11, Stats., will bring into play only the financial responsibility requirements of secs. 31.14(2) and (3), Stats., is belied by the permit and order issued herein. The department's order not only requires repairs to the dams but sets the maximum water level behind Dam #1 and reserves the right to establish the minimum flow past Dam #2 by subsequent order.

and recommended amendments to secs. 31.14(4) and 31.185(1) and (2), Stats., and the creation of sec. 710.11, Stats. These legislative changes were effected by ch. 246, Laws of 1981, effective April 27, 1982. The committee's prefatory note states:

> This bill is a remedial legislation proposal, requested by the department of natural resources, and introduced by the law revision committee under s. 13.83(1)(c)4 of the statutes. After careful consideration of the various provisions of this bill, the law revision committee has determined that this bill makes remedial changes in the statutes, and that these changes are desirable to maintain the accuracy and usefulness of the statutes.

Ch. 246, Laws of 1981.

The amendments to secs. 31.14(4) and 31.185(1) and (2), Stats., were for the sole purpose of clarifying that the statutes applied to the ownership of the land on which a dam is located. The note to these amendments states: "The amendments to sections 31.14(4) and 31.185(1) and (2) of the statutes make it clear that ownership and responsibility for the dam cannot be separated from ownership of that specific piece of land on which the dam is physically located." Sec. 4, ch. 246, Laws of 1981. I discern from these amendments no intent to expand the powers of the department. The amendments are clarifying only.

The note to sec. 5, ch. 246, Laws of 1981, which created sec. 710.11, Stats., reads:

> The creation of sec. 710.11 of the statutes should ensure that people working in the real estate profession, including brokers, attorneys and mortgage insurance companies, will be aware of the requirements of sections 31.14(4) and 31.185(1) and

(2) of the statutes. This new awareness should enable the department of natural resources to maintain accurate records regarding dam ownership and to improve the administration of its dam safety program.

Again, I discern no legislative intent to expand the powers of the department into areas in which it previously exercised no authority. Obviously, an attempt by any state agency to use the law revision committee to effect major substantive expansions of its powers would be summarily rebuffed by the legislature.

Section 710.11, Stats., was enacted after the supreme court decided *State v. Zawistowski,* 95 Wis. 2d 250, 290 N.W.2d 303 (1980). In that case the court said:

> The cranberry law has been "on the books" since 1867, the law requiring a permit for irrigation or agricultural diversion since 1935. If the legislature had intended the cranberry law to be under the permit procedure of the later statute it could have modified the cranberry law to say so. But the legislature has neither repealed, amended, nor modified the cranberry law to give it any such effect.

*Id.* at 262, 290 N.W.2d at 309.

The court thus warned the legislature that if it wished to put cranberry growers under the general permit procedures, it must do so by amendment or modification of the cranberry law. The legislature is presumed to know that in the absence of its changing the law, the construction put upon it by the courts will remain unchanged. *Reiter v. Dyken,* 95 Wis. 2d 461, 471, 290 N.W.2d 510, 515 (1980), quoting *Zimmerman*

*v. Wisconsin Electric Power Co.,* 38 Wis. 2d 626, 634, 157 N.W.2d 648, 651 (1968).

In addition to the *pari materia* principle of statutory construction, there is a further principle of construction which compels the conclusion that secs. 31.14 and 710.11, Stats., do not apply to cranberry dams. "There is no rule of construction more reasonable, and none better settled, than that special provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes, so far as there is a conflict." *Zawistowski,* 95 Wis. 2d at 263, 290 N.W.2d at 310.

The cranberry law, in secs. 94.27 through 94.30, Stats., prescribes a procedure by which a person who builds or maintains a cranberry dam shall be liable to persons injured by the dam. Whether the financial responsibility procedure provided by sec. 31.14, Stats., is superior to the procedure provided by secs. 94.27 to 94.30 is not relevant. It is true that requiring a person assuming ownership of a cranberry dam to comply with sec. 31.14 does not necessarily conflict with secs. 94.27 to 94.30. However, requiring such compliance would render secs. 94.27 to 94.30 inutile. The fact that the legislature has chosen to continue the accountability procedure prescribed in sec. 94.27 to 94.30 and in fact has amended the procedure, ch. 317, Laws of 1981, is compelling evidence that the legislature does not consider that sec. 31.14 applies to cranberry dams.

The cranberry law was created by ch. 40, Laws of 1867, and has remained substantially unchanged for well over 100 years. *Zawistowski,* 95 Wis. 2d at 258, 290 N.W.2d at 308. The act is titled "An Act to encourage the cultivation of cranberries." Under this act, a major industry has developed in Wisconsin. Harnsberger, *Prescriptive Water Rights in Wisconsin,*

616

1961 Wis. L. Rev. 47, 56. If that major industry is to be subjected to the permitting and regulatory procedures of chs. 30 and 31, Stats., the legislative action to do so should be advertent. Our decision herein extends the reach of the department beyond the grasp intended by the legislature. Therefore, I respectfully dissent.