SCHARPING, Statutory Representative, Appellant, v. JOHNSON, Director of Planning Function, Department of Resource Development, Respondent.

*October 4—November 1, 1966.*

---

388

For the appellant there was a brief and oral argument by *C. J. Schloemer* of West Bend.

For the respondent the cause was argued by *Albert Harriman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J. The creation of municipal corporations is peculiarly within the province of the legislature. A unit of local government is a creature of the legislature. It owes its existence to legislative fiat and its life may be snuffed out by appropriate legislative action. It is a matter of hornbook law [1] that:

"The exercise of the legislative function of creating municipal corporations is wholly within the discretion of the legislature, and is not subject to the control of the judicial power."

"Subject to state constitutional limitations, the power of the state legislature over municipal corporations is complete, and it may create, change, divide, and even

---

[1] Cooley, Handbook of the Law of Municipal Corporations (hornbook series), West Publishing Co. (1914), page 35.

abolish them, at pleasure, as it deems in the public good." [2]

In *Madison Metropolitan Sewerage Dist. v. Committee* (1951), 260 Wis. 229, 50 N. W. (2d) 424, we pointed out the broad scope of legislative control over local government. Quoting earlier cases, this court said:

" 'Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them. . . . The state, therefore, at its pleasure, may . . . expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme, and its legislative body, conforming its action to the state constitution, may do as it will . . . .' "

What the appellants would have us review is, therefore, the exercise of a legislative function that has been delegated to the state department of resource development. Sec. 66.017 (2), Stats., makes the decision of the director reviewable under the terms of ch. 227. The objections raised by the appellant must be tested by sec. 227.20 (1) (d) and (e). Sec. 227.20 provides that the decision of the agency may be reversed or modified by the circuit court:

". . . if the substantial rights of the appellant have been prejudiced as a result of the administrative findings, inferences, conclusions, or decisions being:
". . .
"(d)   Unsupported by substantial evidence in view of the entire record as submitted; or
"(e)   Arbitrary or capricious."

We conclude the scope of our review to be identical to that given to the circuit court by sec. 227.20, Stats.

---

[2] Ryhne, Municipal Law (1957), p. 11.

The appellant contends that the action of the director was arbitrary or capricious and, hence, violative of the standards imposed by sec. 227.20 (1) (e), Stats. A review of the record, however, makes it clear that the director's action was neither arbitrary nor capricious. The capricious use of administrative power is described as follows:

"It is, in general, the most flagrant violations of the scope of delegated discretionary powers which are described as capricious. In common usage, the term refers to a whimsical, unreasoning departure from established norms or standards; it describes action which is mercurial, unstable, inconstant, or fickle. In legal usage, a decision is capricious if it is so unreasonable as to 'shock the sense of justice and indicate lack of fair and careful consideration.'

"Typical of the cases in which the epithet *capricious* may properly be applied are those where an agency has given different treatment to two respondents in identical circumstances, or has exhibited an irrational unfairness which suggests malice or discrimination." 2 Cooper, State Administrative Law (1965), p. 761.

This court has stated:

"Arbitrary or capricious action . . . occurs when it can be said that such action is unreasonable or does not have a rational basis. . . . Arbitrary action is the result of an unconsidered, wilful and irrational choice of conduct and not the result of the 'winnowing and sifting' process." *Olson v. Rothwell* (1965), 28 Wis. (2d) 233, 239, 137 N. W. (2d) 86.

Obviously, there is no basis in this record for denominating the conduct of the director either as arbitrary or capricious in light of the above definitions. The real question is whether the findings are supported by substantial evidence in light of the record as a whole. The test to be used is that enunciated in *Ashwaubenon v. State Highway Comm.* (1962), 17 Wis. (2d) 120, 131, 115 N. W. (2d) 498, where we stated:

". . . when the 'substantial evidence' rule of sec. 227.20 (1) (d), Stats., is applied to a legislative-type decision, the test is whether reasonable minds could arrive at the same conclusion reached by the commission."

*Is there substantial evidence to support the director's determination?*

The director applied the standards of sec. 66.016, Stats., to the petition and considered the application to be for the incorporation of an isolated village [3] and determined the petition must be dismissed. To qualify for incorporation, the area must meet the requirements of both sec. 66.016 (1) (a), pertaining to the characteristics of the territory, and sec. 66.016 (1) (b), in reference to territory beyond the core. It must also be determined to be in the public interest, after giving consideration to the guidelines of sec. 66.016 (2).

The director found that:

"Section 66.016 (1) (a), Wis. Stats., states that the area to be incorporated must be reasonably homogeneous and compact. In fact, the area outside of the core is largely rural. Being rural, with sizeable individual land holdings, the requirement of compactness is not met." [4]

---

[3] The director concluded that the nature of the area was metropolitan and that application should have been for incorporation as a metropolitan village and not as an isolated village, but proceeded to base his findings on the hypothesis that Rockfield could not qualify for incorporation even by the less rigorous standard applicable to the isolated village.

[4] This decision accords with decisions by this court involving the earlier incorporation statutes, which held that a village may not be incorporated where the territory to be included therein involves a large amount of sparsely settled rural or agricultural lands not having the distinctive characteristics of the village area itself. See *In re Town of Hallie* (1948), 253 Wis. 35, 38, 39, 33 N. W. (2d) 185; *In re Village of Elmwood Park* (1960), 9 Wis. (2d) 592, 600, 101 N. W. (2d) 659 (concurring opinion of Mr. Justice CURRIE).

There is evidence in the record showing considerable disparity in the population of the sections within the proposed incorporation. The disparity of population ranges from 298 to 29. We conclude that the requirement of homogeneity is not met because of this diversity. We do, however, question the director's interpretation of the standard of "compactness." In view of legislative concern over attenuated annexations and gerrymandered "shoestring" shaped districts, we conceive that the requirement of "compactness" is addressed primarily to the regularity of the shape of the proposed annexation. Taking notice of the map, made a part of the record, it is apparent that the incorporation does not offend in that respect.

The director also found:

"Also of concern is the requirement that the area have a reasonably developed community center which is the focal point for the common social, economic and cultural ties that bind the community. It is the opinion of the Director that the crossroads facilities heretofore enumerated do not constitute a reasonably developed community center. The fact that the only church in the core is now empty and unused would suggest that community activities occur elsewhere. There is no facility for public gatherings, no park, no town square or municipal center, no bank, no telephone exchange. The crossroads development which exists is too limited in facilities to function effectively as a community center."

The evidence from which the director might reasonably make this finding is undisputed. The record [5] shows that the core area contains the following establishments:

"Post Office . . . warehouse, unused church, general store, service station, feed store, two taverns, machine shop, print shop, paint shop, two-room school, a subdivision with nine houses, railroad, natural gas, telephone

---

[5] Taken from a summary appearing in appendix to respondent's brief.

service, public sewer, no public water supply. . . . Area children attend highschool in the Village of Germantown. Shoppers patronize the local merchants, but there are a lot of things that can't be gotten there, so they go to West Bend, Menomonee Falls, and Cedarburg."

Hence, it appears that there is substantial evidence to support the findings of the director that the proposed incorporation does not meet the test of sec. 66.016 (1) (a), Stats. Since this is a mandatory requirement, this deficiency alone supports the decision to dismiss the petition.

It is equally apparent that the director could reasonably have determined that the area did not satisfy sec. 66.016 (1) (b), Stats., which requires that in the territory beyond the most densely populated square mile, in an isolated municipality (which by the definitions of sec. 66.013 (2) (e) includes an isolated village), there shall be an average of 30 housing units per quarter section or an assessed value for real-estate-tax purposes of which more than 25 percent is attributable to mercantile, manufacturing, or public utility uses. It is undisputed that not one quarter section beyond the core meets this requirement. The highest number of dwelling units in any quarter section is 10. The director also found that the area did not qualify under the alternative based on assessed valuation. He applied his expert judgment to the assessment rolls and concluded that less than 10 percent of the assessed valuation is attributable to existing mercantile or manufacturing uses. He also found that there was no significant potential for growth indicating that these figures would change drastically. This evidence is uncontradicted in the record. It is apparent that these findings are also supported by substantial evidence.[6]

---

[6] Petitioner argues that it is an error of law to apply this subsection (66.016 (1) (b)) to a petition for an isolated village as this subsection uses the words, "isolated municipality," and refers to the territory beyond the "most densely populated square mile." This argument derives whatever vitality it has from the fact that sec. 66.015 (1), Stats., sets the *minimum* area of an isolated vil-

Nor can the petitioner controvert the finding of the director that the incorporation was not in the public interest. *In re Incorporation of Village of North Milwaukee* (1896), 93 Wis. 616, 624, 67 N. W. 1033, this court held that it was beyond the judicial power to determine the legislative question of whether the public interest would be promoted by the incorporation of a village. We stated:

"The question as to whether incorporation is for the best interest of the community in any case is emphatically a question of public policy and statecraft, not in any sense a judicial question; and in attempting to submit that question to the decision of the circuit court the legislature

lage at "one-half square mile." This argument flies in the face of the definition of "isolated municipality" contained in sec. 66.013 (2) (e), which explicitly includes villages within the defined term. Petitioner does not argue that the phrase, "isolated municipality," as it appears in sec. 66.016 (1) (a) is meant to exclude isolated villages. If, in fact, "isolated municipality" excludes isolated village, then a petition for the incorporation of an isolated village would only need comply with sec. 66.016 (2). This result would seem entirely inconsistent with the opening words of sub. (2):

"In addition to complying with *each* of the applicable standards set forth in sub. (1) and s. 66.015, *any* proposed incorporation in order to be approved for referendum must be in the public interest . . . ." (Emphasis supplied.)

Furthermore, while perhaps evidencing a legislatively dropped stitch in the statute, it cannot be said that the application of sub. (1) (b)'s terms, either to the petitioner (whose area admittedly exceeds one square mile) or to an isolated village of only one-half square mile, would result in any incongruous prejudice. As written, the statute says in effect:

"*If* an isolated village exceeds one square mile *then* the territory beyond the most densely populated square mile must meet sub. (1) (b)'s standards."

It would not seem legislatively capricious to require an isolated village whose territory exceeds one square mile to demonstrate that the excess territory meets certain population standards and is not just irrelevantly attached agrarian land. Thus it would not seem to be an error of law for the director to apply sub. (1) (b) to the petitioner.

has undoubtedly done that which the constitution forbids."

In accordance with that venerable principle, this court's task is confined to applying the strictures of ch. 227, Stats., to the determination of whether the administrative body properly exercised its delegated authority. Accordingly, the question of public interest in respect to the incorporation of a municipality is not properly addressed to this court.

Appellant also challenges the constitutionality of the entire statutory scheme of classifying proposed incorporations on the basis of their characteristics as metropolitan communities, or as isolated municipalities. We conclude that the petitioner has no standing to urge the unconstitutionality of this classification. It is familiar Wisconsin law that a party may not urge the unconstitutionality of a statute upon a point not affecting his rights. *Milwaukee Boston Store Co. v. American Federation of Hosiery Workers* (1955), 269 Wis. 338, 359, 69 N. W. (2d) 762; *Pedrick v. First Nat. Bank of Ripon* (1954), 267 Wis. 436, 441, 66 N. W. (2d) 154. Appellant correctly points out that the classification results in the application of more stringent requirements to those petitions for the incorporation of metropolitan communities. However, the aggrieved parties, in this matter appearing by their statutory representative were treated as petitioners for the incorporation of an isolated village. The less stringent standards were applied to them. They have not been hurt by this classification and we have heretofore insisted that a party must show that he has been injuriously affected by the application of a statute before he can attack it on the grounds of unconstitutionality. *Milwaukee v. Milwaukee Amusement, Inc.* (1964), 22 Wis. (2d) 240, 251, 125 N. W. (2d) 625; *Joint School Dist. v. Boyd* (1955), 270 Wis. 222, 226, 70 N. W. (2d) 630.

Even if the appellant were in a position to raise this point, his argument would fail. We have stated that to be valid, a classification should rest upon a difference which bears a fair, substantial, natural, reasonable, and just relationship to the object, act, or persons in respect to which it is proposed. *State ex rel. Wisconsin Lutheran High School Conference v. Sinar* (1954), 267 Wis. 91, 96, 65 N. W. (2d) 43. We have stated that:

". . . classifications of persons or property must be based upon reasonable differences or distinctions which distinguish the members of one class from those of another in respects germane to some general and public purpose or object of the particular legislation." *Christoph v. Chilton* (1931), 205 Wis. 418, 237 N. W. 134.

In *Madison Metropolitan Sewerage Dist. v. Committee* (1951), 260 Wis. 229, 253, 50 N. W. (2d) 424, we stated that:

"The question of classification is primarily for the legislature, both as to need and basis. . . . All that seems to be required is that there must be some reasonable basis along general lines for the adoption, all reasonable doubts to be resolved in favor thereof . . . ."

This court has recognized the general legislative purpose in enacting these sections of the statutes:

"The legislature in its 1959 session made substantial changes in the statutory law governing the overall problem of municipal incorporation and urban expansion. A dominant change was a legislative recognition that many localities of the state were experiencing a substantial urban growth and that the existing legislation permitted haphazard, unrealistic, and competitive expansion without regard for present and probable future development in the best overall public interest." *Elmwood Park v. Racine* (1966), 29 Wis. (2d) 400, 406, 139 N. W. (2d) 66.

It was pursuant to this general purpose that the classifications in question were made. The legislative note

attached to Assembly Bill No. 226, A., of the 1959 legislative session reads in part:

"Particular attention is devoted to establishing minimum standards which are relevant to the problems presented by governmental organization in metropolitan areas. This bill also recognizes the special problems of rural or 'isolated' areas by providing somewhat different standards for proposed incorporations in such areas." (p. 1)

"The impact of an incorporation on a metropolitan community must also be considered. To prevent fragmentation of an urban area the director is required to make 'an express finding that the proposed incorporation will not substantially hinder the solution of governmental problems affecting the metropolitan community' of which the territory is a part." (p. 2)

Thus, it was apparent that the classifications in question followed from a legislative determination that the problems of the metropolitan community and the isolated community were different and required different treatment. The reason for the exact difference in treatment effected appears on page 13 of this legislative note:

"For each of the types of municipalities defined in s. 66.013 (2) different minimums are established. The minimums vary according to the proximity of the proposed incorporation to a metropolitan center. The requirements for creation of a village or city near a metropolitan community are more stringent to avoid the creation of governmental units without sufficient area or population to economically supply services or perform functions which are needed."

The classification meets the applicable constitutional tests.

The appellant also claims that the statutory scheme of classification offends against sec. 23, art. IV [7] (uniform

---

[7] Sec. 23, art. IV: "The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable; but the legislature may provide for the

town and county government), and sec. 3, art. XI [8] (home rule), Wisconsin constitution. The appellant has not defined his objections based on these sections of the constitution. However, a perusal of these sections of the constitution makes apparent their inapplicability to the case at hand. Even assuming the relevance of these sections, it is apparent that they are concerned with the treatment of municipalities and their form of government after organization and not with the constitutional power to create cities and villages by act of the legislature.

*By the Court.*—Judgment affirmed.

election at large once in every four years of a chief executive officer in any county having a population of five hundred thousand or more with such powers of an administrative character as they may from time to time prescribe in accordance with this section."

[8] Sec. 3, art. XI: "Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature."