IN the MATTER OF the PETITION FOR INCORPORATION OF TOWN OF PEWAUKEE:

Brent J. REDFORD and Town of Pewaukee, Plaintiffs-Appellants,†

v.

Wisconsin DEPARTMENT OF DEVELOPMENT and City of Waukesha, Defendants-Respondents.

Court of Appeals

*No. 93–2897. Submitted on briefs May 31, 1994.—Decided July 27, 1994.*

(Also reported in 521 N.W.2d 453.)

†Petition to review denied.

516

519

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *H. Stanley Riffle* and *Eric O. Schlieter* of *Arenz, Molter, Macy & Riffle, S.C.* of Waukesha.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *F. Thomas Creeron III*, assistant attorney general.

Before Brown, Nettesheim and Dykman, JJ.

BROWN, J.   Brent J. Redford and the Town of Pewaukee appeal from a judgment affirming the Wisconsin Department of Development's (DOD) determination that three criteria for incorporation of the Town as a city were not satisfied. The Town argues that the DOD mainly disallowed incorporation based on evidence that the Town's territory has been fragmented by various annexations over the years. The Town then submits that, because the DOD played an influential role by approving these annexations, using the resulting fragmentation to deny incorporation is arbitrary or capricious.

The Town further claims that without this evidence of fragmentation, there would be insubstantial evidence to deny incorporation. We hold that the DOD's use of evidence resulting from annexations was not arbitrary or capricious. We conclude that there was sufficient evidence to support the DOD's determination.

The Town filed a petition to incorporate as a city of the fourth class. In its written decision, the DOD considered the following history of the Town's development. The Town of Pewaukee shares borders with the Village of Pewaukee and the City of Wauke-

sha, municipalities which have previously annexed territory from the Town. Town lands have also been transferred to the village as a result of two boundary agreements between the Town and the village. The Town has been unsuccessful in reaching a similar boundary agreement with the City of Waukesha involving certain isolated town lands, sections 29 through 32. The failed agreement results in the continued isolation of those town lands. Also, the Town's municipal planning data identifies the existence of wetlands, flood-prone areas and areas of unstable soils which restrict any form of incompatible development.

The DOD determined that the Town did not satisfy three of the six required criteria for incorporation set forth in § 66.016, STATS. Those three criteria are: (1) homogeneity and compactness, (2) the potential for urban development of territory beyond the most densely populated square mile and (3) an express finding that incorporation will not hinder the solution of government problems in the metropolitan community. The Town petitioned the circuit court for judicial review of the DOD's determination. The City of Waukesha was joined as a defendant in this matter. The circuit court affirmed the DOD. Further facts will be provided during discussion of the issues.

To qualify for incorporation, an area must meet all six requirements of § 66.016, STATS. *Scharping v. Johnson*, 32 Wis. 2d 383, 391, 145 N.W.2d 691, 696 (1966). Our review[1] of the DOD's determination under

---

[1] Because this is an appeal from a circuit court judgment reviewing an administrative agency's decision, we review the agency's decision, not the court's decision. *See Richland School Dist. v. DILHR*, 166 Wis. 2d 262, 273, 479 N.W.2d 579, 584 (Ct. App. 1991), *aff'd,* 174 Wis. 2d 878, 498 N.W.2d 826 (1993).

§ 66.016 is limited to whether the findings are supported by substantial evidence and whether the determination is arbitrary or capricious. *See Westring v. James*, 71 Wis. 2d 462, 475-76, 238 N.W.2d 695, 702 (1976). The test for substantial evidence "is whether reasonable minds could arrive at the same conclusion reached by the [agency]." *Scharping*, 32 Wis. 2d at 391, 145 N.W.2d at 695 (quoted source omitted). The test for whether a determination is arbitrary or capricious is whether it can be said that such an action does not have a rational basis. *Westring*, 71 Wis. 2d at 477, 238 N.W.2d at 703.

We initially address the Town's argument that the DOD's decision was arbitrary or capricious because the DOD "approved" annexations of the Town's territory and thereby helped create irregular boundaries and fragmentation of the Town.[2] We read the Town's argu-

---

[2] The Town also argues that the DOD was capricious because it approved these same boundaries for the City of Waukesha and the Village of Pewaukee that it is now rejecting for the Town of Pewaukee. In *Scharping v. Johnson*, 32 Wis. 2d 383, 390, 145 N.W.2d 691, 695 (1966), the term "capricious" was defined as giving different treatment to two respondents in identical circumstances. However, here, the circumstances are not identical. Although the Town shares boundaries with the City of Waukesha and the Village of Pewaukee, the Town does not thereby have the same territory as those with which it shares those boundaries. The boundaries are not considered without also considering the area which they define. "Each incorporation will differ on its facts and the administrative director determines only whether these facts come within the legislative standards." *Schmidt v. Department of Local Affairs & Dev.*, 39 Wis. 2d 46, 60, 158 N.W.2d 306, 314 (1968). Thus, we do not agree that the DOD's determination was capricious on the basis that the Town shares boundaries with incorporated areas.

ment as saying that when any negative evidence concerning incorporation is the product of prior annexations from the Town, the DOD may not consider that evidence, since the DOD is, in part, responsible for the conditions resulting from the annexation.

To support this argument, the Town relies on *Town of Pleasant Prairie v. Johnson*, 34 Wis. 2d 8, 148 N.W.2d 27 (1967). In *Pleasant Prairie*, our supreme court stated:

> The appellants object to the director's reliance on the irregularity of the boundary between the town and the city of Kenosha because such irregularity was partly caused by annexations which were previously approved by the director. We are sympathetic with this contention. *If it is not arbitrariness* for the director to find a lack of compactness because of a condition which in a sense he helped cause, it is at least a case in which the director is lifting himself by his own bootstraps.
>
> However, there is ample other evidence to sustain the director's findings on homogeneity and compactness.

*Id.* at 12, 148 N.W.2d at 30 (emphasis added).

The Town argues that we are bound by the court's statement in *Pleasant Prairie* and that this language dooms the DOD's entire determination. We disagree for two reasons. First, to dismiss an incorporation petition, the DOD need only determine that one of the six factors in § 66.016, STATS., was not met. *Sharping*, 32 Wis. 2d at 391, 145 N.W.2d at 696. The language in *Pleasant Prairie* was only directed to the "compactness and homogeneity" criterion. In fact, the supreme court affirmed the dismissal of the incorporation based upon other factors listed by the director.

Second, and more importantly in our view, the *Pleasant Prairie* court did not rule that using evidence of prior annexations in dismissing an incorporation petition was evidence of an arbitrary or capricious determination. A close look at the passage cited by the Town reveals that the court wrote: "If it is not arbitrariness . . . .." Standing by itself, that statement is ambiguous and establishes nothing. However, when this statement is read in context with the whole discussion afterward, the meaning of the court's statement becomes obvious. The court was simply writing that it was not going to rule whether the use of annexation evidence was arbitrary. Rather, it was enough to decide the case based upon other evidence. We conclude that the ambiguous statement by the supreme court could not have been meant as a binding determination. *See Pleasant Prairie*, 34 Wis. 2d at 12, 148 N.W.2d at 30.

Therefore, we decide the issue that the *Pleasant Prairie* court did not decide. The DOD argues that its consideration of irregular boundaries is not arbitrary or capricious because its annexation review function under § 66.021(11), STATS., is purely advisory. We agree with the DOD.

Under § 66.021(11), STATS., the DOD must receive a notice of annexation. That section further provides that the DOD "may . . . mail to the clerk of the town within which the territory lies and to the clerk of the proposed annexing village or city a notice that in its opinion the annexation is against the public interest.. . . [T]he department shall advise . . . of the reasons the annexation is against the public interest . . . .. The annexing municipality shall review such advice before final action is taken." *Id.* Thus, the plain language of the statute shows that the DOD's role is advisory; it

cannot be said that the DOD created the fragmentation and irregular boundaries.

The DOD reviews annexations only in consideration of the objectives recognized by the legislature—to prevent haphazard, unrealistic and competitive expansion of municipalities which disregards the overall public interest. *See Village of Elmwood Park v. City of Racine*, 29 Wis. 2d 400, 406, 139 N.W.2d 66, 68 (1966). The public interest determination is based on whether governmental services can best be provided "by the town or by some other village or city whose boundaries are contiguous to the territory proposed for annexation . . .." Section 66.021(11)(c)1, STATS. The decision is advisory and issued only when the proposed annexation, in the DOD's view, is contrary to the public interest. Therefore, the DOD does not "approve" annexations; it does not help create the annexation. In fact, the sole role of the DOD regarding the prior annexations relating to this case was to advise if the annexations of the Town's territory to the City of Waukesha or the Village of Pewaukee were against the public interest. The DOD did not so advise. Such was the extent of the DOD's involvement. We conclude, consistent with the legislative objectives, that the DOD may consider facts and circumstances resulting from previous annexations in its incorporation determinations.

Therefore, in reviewing whether the DOD's determination was supported by substantial evidence, we will consider all evidence the DOD used. The evidence relating to each of the three criteria reveals as follows:[3]

---

[3] These three criteria are in relevant part:

　(1)　The department may approve for referendum only those proposed incorporations which meet the following requirements:

First, under § 66.016(1)(a), STATS., the DOD determined that the territory of the proposed city was not "reasonably homogeneous and compact." The DOD found that "wetlands and associated soils . . . together with the current boundaries of the city and village, serve to almost divide the town into two parts . . .. In addition, Lake Pewaukee physically separates [certain sections of the town] from the remainder of the town. These natural characteristics effectively split the town into three parts, preventing a finding of compactness."

The DOD also considered the Town's shopping and social customs, a consideration identified in § 66.016,

> (a)  *Characteristics of territory*. The entire territory of the proposed village or city shall be reasonably homogeneous and compact, taking into consideration natural boundaries, natural drainage basin, soil conditions, present and potential transportation facilities, previous political boundaries, boundaries of school districts, shopping and social customs. . ..
>
> (b)  *Territory beyond the core*. . . . The territory beyond the most densely populated square mile . . . shall have the potential for residential or other urban land use development on a substantial scale within the next 3 years. The department may waive these requirements to the extent that water, terrain or geography prevents such development.
>
> (2)  In addition to complying with each of the applicable standards set forth in sub. (1) and s. 66.015, any proposed incorporation in order to be approved for referendum must be in the public interest as determined by the department upon consideration of the following:
>
> . . ..
>
> (d)  *Impact on the metropolitan community*. The effect upon the future rendering of governmental services both inside the territory proposed for incorporation and elsewhere within the metropolitan community. There shall be an express finding that the proposed incorporation will not substantially hinder the solution of governmental problems affecting the metropolitan community.

Section 66.016, STATS.

STATS.[4] The Town's land use plan showed that the Town intended not to develop shopping centers in the territory because of the availability of such services in contiguous areas. From this land use plan, the DOD then concluded that the result of this plan is that the Town is not being developed with businesses that meet the daily needs of Town residents; thus, the Town is "externally oriented."

Furthermore, the DOD concluded that "[s]ocial customs . . . lack[ ] such a focus as had been previously obtained through association with the Village of Pewaukee, where all of the civic clubs and service organizations appear to be located . . .." Thus, the existing and future residents of these lands would relate more to the village than the Town because of the shops and services available in the village. We hold that reasonable minds could arrive at the same conclusion as the DOD from the foregoing evidence; thus, we hold that substantial evidence supports this part of the DOD's determination.

As we have elsewhere stated, to dismiss an incorporation petition, the DOD need only determine that one of the six factors in § 66.016, STATS., was not met. *Scharping*, 32 Wis. 2d at 391, 145 N.W.2d at 696. Nonetheless, we alternatively address and reject the Town's arguments under the two other criteria noted by the DOD as lacking.

---

[4] This evidence does not pertain to fragmentation caused by annexations. Thus, even if we were to decide that the DOD may not consider evidence of fragmentation created by annexations, the DOD's determination concerning shopping and social customs would alone be substantial evidence.

Under § 66.016(2)(d), STATS., the DOD must make an "express finding that the proposed incorporation will not substantially hinder the solution of governmental problems affecting the metropolitan community." Thus, the incorporation procedures place stringent requirements to avoid the fragmentation of an urban area in which multiple incorporations would hinder the metropolitan community's ability to supply necessary services and to perform necessary functions in an economically efficient manner. *City of Waukesha v. Salbashian*, 128 Wis. 2d 334, 354, 382 N.W.2d 52, 59-60 (1986).

Here, the DOD determined that "[w]ith respect to the metropolitan community . . . should incorporation occur, that irregular boundaries would persist, despite the several attempts by the town through intermunicipal agreement to resolve existing and potential issues resulting from these irregular boundaries. Irregular boundaries . . . presently hinder effective service delivery . . .."

The Town argues that there is no evidence to support the DOD's conclusion that the Town's boundaries would hinder effective sewer service delivery. We disagree with the Town. The DOD found that sewer service for sections 29 through 32 of the Town would require an extension of the City of Waukesha's Service Area Boundary. The DOD also found that the Town and the City of Waukesha had failed to reach a boundary agreement regarding this area and that no feasible solution to the problems had been suggested. Thus, the DOD concluded that service to this area could only be achieved if Waukesha annexed the territory. Cities and villages can annex only unincorporated areas. There-

fore, we hold that reasonable minds could conclude that the incorporation of the Town would hinder the resolution of the governmental problem of providing this service.

Finally, we address the DOD's determination under the potential for development factor. Under § 66.016(1)(b), STATS., the DOD determined that "[t]he territory beyond the most densely populated square mile" did not "have the potential for residential or other urban land use development on a substantial scale within the next 3 years." The DOD found that certain sections of land contained undevelopable lands zoned for conservancy, as floodland, and lands zoned exclusively agricultural. However, the DOD excluded such areas as conservancies or floodland in its analysis of potential "development on a substantial scale."[5] The DOD determined that sections 29 through 32 did not have the potential for "development on a substantial scale" because of the Town's inability to provide sewer service to these sections. The DOD stated: "This area of the town is, by itself, too large to ignore."

■

The Town's underlying argument under this criteria is based on the same contention it made under § 66.016(2)(d), STATS., that there was no substantial

---

[5] The Town contends that the DOD erroneously interpreted § 66.016(1)(b), STATS., to require that "every single square foot of the proposed territory be subject to residential or commercial development within the next three years." We disagree that the DOD made this interpretation. The DOD did not impose the requirement that "every single square foot" be subject to development. The DOD found that certain lands zoned as conservancies or floodlands would not be developed, but that their existence alone did not require a conclusion against incorporation under § 66.016(1)(b).

evidence of the Town's inability to provide sewer service to this area.[6] However, as we stated before, we hold that substantial evidence supports the DOD's finding that the Town could not provide sewer service to this area. Therefore, we hold that the DOD's ultimate conclusion that this area did not have the potential for development under the Town's incorporation was supported by substantial evidence.

The Town also argues that the DOD should have waived the "potential for development" requirement for these lands. The DOD acknowledged that the standard in subsec. (1)(b) allows it to waive this requirement "to the extent that water, terrain or geography prevents such development." *See* § 66.016(1)(b), STATS. However, the DOD concluded that the provision does not allow waiver for land which is excluded for policy reasons by zoning.

The Town contends that the § 66.016(1)(b), STATS., provision allows waiver for agricultural zoning because the word "geography" in the provision contemplates the "impact of man and his industries" on the physical characteristics of the area. The Town argues that agricultural zoning is such an impact on the physical characteristics of an area. We disagree.

Whether the provision allows a waiver for land zoned for agriculture involves the interpretation of a statute which presents a question of law. *See Murphy v. LIRC*, 183 Wis. 2d 205, 211, 515 N.W.2d 487, 490 (Ct. App. 1994). Here, because the DOD did not set forth a definition of "geography," we address the issue without

---

[6] Although the Town raises several arguments under this criteria, we do not address them all because we need only decide whether the DOD's determination was supported by substantial evidence.

the benefit of an administrative agency's statutory interpretation. Thus, our review is de novo. *See Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 245-46, 493 N.W.2d 68, 73-74 (1992).

In interpreting a statute, we first look to the plain meaning of the statute. *See Hainz v. Shopko Stores, Inc.*, 121 Wis. 2d 168, 172, 359 N.W.2d 397, 400 (Ct. App. 1984). In ascertaining the plain meaning of a term, we may consult a dictionary definition. *See Johnson v. City of Darlington*, 160 Wis. 2d 418, 427, 466 N.W.2d 233, 236 (Ct. App. 1991). Although, as the Town argues, "geography" as a science deals with the distribution of "man and his industries" in relation to the land, sea and air, WEBSTER'S THIRD NEW INT'L DICTIONARY 948 (unabr. 1976), we do not discern from the statutory language that the legislature intended to invoke the entire science of geography as a reason to waive the requirement of this section. Under this construction, the exception would swallow the rule. *See Wisconsin Power & Light Co. v. Public Serv. Comm'n*, 181 Wis. 2d 385, 395, 511 N.W.2d 291, 295 (1994). As the City of Waukesha contends, any township seeking incorporation could simply zone certain areas as agricultural to avoid the "potential for development" requirement.

We hold that the plain meaning of "geography" relates to "the natural features of a region." *See* THE NEW MERRIAM-WEBSTER DICTIONARY 315 (1989). If the natural features of the region, such as a hill composed of solid rock for example, made potential development of that area prohibitive, if not impossible, it would make sense to waive the "potential for development" criterion relating to that specific area. Agricultural

zoning, however, is not a natural feature prohibiting development; zoning is a legislative choice limiting development. *See Quinn v. Town of Dodgeville*, 120 Wis. 2d 304, 308, 354 N.W.2d 747, 750 (Ct. App. 1984), *aff'd*, 122 Wis. 2d 570, 364 N.W.2d 149 (1985). Therefore, we hold that § 66.016(1)(b), STATS., does not allow waiver on the basis of agricultural zoning.

We conclude, when considering the DOD's determination as a whole, that its determination was consistent with the legislative objective to avoid the creation of governmental units too fragmented to supply necessary services and to perform necessary functions in an economically efficient manner. *See Salbashian*, 128 Wis. 2d at 354, 382 N.W.2d at 59-60. A reasonable reading from the DOD's incorporation determination under the three criteria is that the DOD concluded that the City of Waukesha and the Village of Pewaukee are better equipped than the proposed City of Pewaukee to supply certain services to the area residents. That determination is based upon substantial evidence and is not arbitrary or capricious. We will not disturb it.

*By the Court.*—Judgment affirmed.