Donna WALAG and William Crockett, Representatives of the Petitioners for the Incorporation of the Village of Powers Lake, Petitioners-Appellants,

v.

WISCONSIN DEPARTMENT OF ADMINISTRATION, Respondent-Respondent,

TOWN OF RANDALL, Interested Party-Respondent,

TOWN OF BLOOMFIELD, Interested Party.

Court of Appeals

*No. 00–3513. Submitted on briefs July 18, 2001.—Decided August 22, 2001.*

2001 WI App 217

(Also reported in 634 N.W.2d 906.)

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Patrick J. Hudec* and *Gabrielle Boehm* of *Hudec Law Offices, S.C.* of East Troy.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *F. Thomas Creeron III,* assistant attorney general.

On behalf of Town of Randall, Interested Party, a brief was filed by *Larry Steen* of *Larry Steen Law Office* of Elkhorn.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. NETTESHEIM, P.J. Donna Walag and William Crockett, representatives of the petitioners for the Incorporation of the Village of Powers Lake (the petitioners), appeal from a decision of the Wisconsin Department of Administration (the Department) denying their petition for the incorporation of the proposed Village of Powers Lake. The Department determined that the petitioners' proposed village failed to meet the minimum requirements of incorporation as set forth in

Wɪs. Stat. § 66.016(1)(a) (1997–98).[1] We conclude that there is substantial evidence to sustain the Department's finding that the proposed village lacks homogeneity, compactness and a reasonably developed community center. We uphold the Department's determination, giving great weight to its statutory interpretation and conclusions of law.

## *BACKGROUND*

¶ 2. This is the petitioners' fifth attempt since 1990 to incorporate the proposed Village of Powers Lake. The proposed village lies within the towns of Randall, Bloomfield and Wheatland and falls within both Kenosha and Walworth counties. The present petition was filed in Kenosha county on December 17, 1993. The circuit court referred the petition to the Department for a public hearing. The Town of Randall unsuccessfully appealed the circuit court's decision to refer the matter for public hearing.[2] *Walag v. Town of Randall*, 213 Wis. 2d 424, 570 N.W.2d 623 (Ct. App. 1997).

¶ 3. The Department conducted a public hearing on the petition on May 12, 1998, during which it heard

---

[1] Pursuant to 1999 Wis. Act 150, effective January 1, 2001, Wɪs. Stat. ch. 66 was reorganized and renumbered. Wɪsᴄᴏɴsɪɴ Stat. § 66.016 (1997–98), the specific provision in question, has been renumbered as Wɪs. Stat. § 66.0207. 1999 Wis. Act 150, § 38. These changes were not substantive and do not affect our decision on appeal. We will refer to the statutes as numbered at the time of this case. Therefore, the statutory references are to the 1997–98 statutes unless otherwise indicated.

[2] The town of Randall and the town of Bloomfield are interested parties to this action. The town of Randall has participated in this appeal and has filed a brief as an interested party-respondent.

testimony from numerous witnesses and considered evidence relevant to whether the proposed Village of Powers Lake fulfills the statutory requirements of incorporation pursuant to WIS. STAT. § 66.016.

¶ 4. On October 15, 1999, the Department issued its written determination. The Department found that the petition did not meet the criteria for the incorporation of a village pursuant to WIS. STAT. § 66.016(1)(a). Specifically, the Department found that the proposed village lacked homogeneity, compactness and a reasonably developed community center. The Department dismissed the petition. Upon review, the circuit court upheld the Department's decision. The petitioners appeal.

## DISCUSSION

### 1. Standard of Review

¶ 5. We review the Department's decision, not that of the circuit court. *Thompson v. DPI*, 197 Wis. 2d 688, 697, 541 N.W.2d 182 (Ct. App. 1995). "Our scope of review is identical to that of the [circuit] court." *Id*. As we have explained:

> A different standard of review for agency decisions is applied for questions of law and questions of fact. If presented with a question of fact, we employ the "substantial evidence" standard. Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. An agency's decision may be set aside by a reviewing court only when, upon examination of the entire record, the evidence, including the inferences therefrom, is such that a reasonable person could not have reached the decision from the evidence and its inferences.

If the issue presents a question of law, we must "set aside or modify the agency action if [we] find[] that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or [we] shall remand the case to the agency for further action under a correct interpretation of the provision of law." To this end, we apply one of three levels of deference to the conclusion of the agency: "great weight," "due weight" or "de novo."

The great weight standard is the highest degree of deference. It is applied when the agency is charged with administration of the statute at issue, the agency's interpretation is based on "its expertise or specialized knowledge," the interpretation provides "uniformity and consistency in the application of the statute," and the agency conclusion or interpretation is "long standing." If the foregoing criteria are met, we will sustain the agency's interpretation even if an equally or more reasonable interpretation is offered.

*Sea View Estates Beach Club, Inc. v. DNR*, 223 Wis. 2d 138, 148–49, 588 N.W.2d 667 (Ct. App. 1998) (citations omitted).

██

¶ 6. The parties dispute the standard of review to be applied in this case. The petitioners contend that the Department's decision is not entitled to the great weight level of deference because it has failed to apply Wis. Stat. § 66.016(1)(a) consistently. We reject the petitioners' argument.

¶ 7. The Department is charged with the administration of Wis. Stat. § 66.016 pursuant to Wis. Stat. § 66.014(9). The Department has expertise and specialized knowledge in the area of development. Its application of § 66.016(1)(a) is "long standing" and it has consistently required that a proposed village must be homogenous, compact and have a reasonably devel-

oped community center. We conclude that the Department's determination is entitled to great weight deference.

### 2. *Village Incorporation Standards,* WIS. STAT. *§ 66.016*

¶ 8. WISCONSIN STAT. § 66.016(1) sets forth the standards to be applied by the department prior to approving a proposed incorporation:

> **Standards to be applied by the department.** **(1)** The department may approve for referendum only those proposed incorporations which meet the following requirements:
>
> (a) *Characteristics of territory.* The entire territory of the proposed village or city shall be reasonably homogenous and compact, taking into consideration natural boundaries, natural drainage basin, soil conditions, present and potential transportation facilities, previous political boundaries, boundaries of school districts, shopping and social customs. An isolated municipality shall have a reasonably developed community center, including some or all of such features as retail stores, churches, post office, telecommunications exchange and similar centers of community activity.
>
> (b) *Territory beyond the core.* The territory beyond the most densely populated one-half square mile specified in s. 66.015(1) or the most densely populated square mile specified in s. 66.015(2) shall have an average of more than 30 housing units per quarter section or an assessed value, as defined in s. 66.021(1)(a) for real estate tax purposes, more than 25% of which is attributable to existing or potential mercantile, manufacturing or public utility uses. The territory beyond the most densely populated square mile as specified in s. 66.015(3) or (4) shall have the

potential for residential or other urban land use development on a substantial scale within the next 3 years. The department may waive these requirements to the extent that water, terrain or geography prevents such development.

In addition to complying with each of the requirements of § 66.016(1), a proposed incorporation must also be in the public interest as determined by the department upon consideration of four factors: tax revenue, level of governmental services, its impact on the remainder of the town and its impact on the metropolitan community. Sec. 66.016(2).

¶ 9. Prior to the revision of WIS. STAT. § 66.016 in 1959, *see* Laws of 1959, ch. 261, § 5, there were no requirements as to the "characteristics" of a proposed village. Rather, the incorporation statute required only a minimum area of land and density of population. *See* WIS. STAT. § 66.016 (1957). If a dispute arose, the courts employed the "village-in-fact" test established in *State ex rel. Town of Holland v. Lammers*, 113 Wis. 398, 417, 86 N.W. 677 (1902), which required that a village exist in fact prior to its incorporation.[3] *See Dremel v. L.L. Freeman, Inc.*, 9 Wis. 2d 592, 598, 101 N.W.2d 659 (1960) ("the court must . . . determine whether the entire area proposed to be incorporated is a village in fact under the standards prescribed in . . . *Lammers*"); *Gotfredson v. Town of Summit*, 7 Wis. 2d 400, 402, 97

---

[3] A "village-in-fact" was historically defined as "any small assemblage of houses, for dwelling or business, or both, in the country, whether situated upon regularly laid-out streets and alleys or not. A compact center or nucleus of population was required and adjacent lands reasonably appurtenant and necessary for future growth, always considering the surroundings . . . and prospects of future prosperity." *Gotfredson v. Town of Summit*, 7 Wis. 2d 400, 402, 97 N.W.2d 189 (1959).

N.W.2d 189 (1959) (discussing the village-in-fact standard); *Gotfredson v. Town of Summit,* 270 Wis. 530, 532, 72 N.W.2d 544 (1955) ("[t]he incorporation of a village can occur only when the affected territory and population constitute a village in fact"); *Town of Brookfield v. Beisber,* 267 Wis. 157, 163, 64 N.W.2d 874 (1954) (recognizing the village-in-fact standard).

¶ 10. In 1959, the urban problems committee presented a report to the legislature and to the governor addressing problems confronting city and village governments resulting from urban expansion. The committee's task in part was "[t]o consider and recommend such revisions in the statutes as are deemed necessary to aid in the solution of urban expansion problems." *Report of the Interim Urban Problems Committee to the 1959 Wisconsin Legislature,* [Wisconsin Legislative Council] p. iii (1959). In examining then existing law and suggesting changes, the committee noted, "There is no precise statutory definition of the type of land which reasonably could be considered municipal in character, and thus logically eligible for incorporation. Without such guide-posts some areas have been incorporated which lack the characteristics normally associated with village or city government." *Id.* at 9–10. The committee proposed changes to existing law noting, "The fundamental change made by the committee . . . is contained in s. 66.016 which sets forth the standards to be applied by the director of regional planning in reviewing proposed incorporations. All incorporations must be 'reasonably homogenous and compact' and must evidence a pattern of significant land development." *Report* at 15.

¶ 11. In 1959, the legislature adopted the "community character" standards set forth in Wis. Stat. § 66.016(1)(a). Since the enactment of those stan-

dards, the required characteristics of a proposed village, including that it be reasonably homogenous and compact, have been governed by statute and evaluated by the department.

### 3. Substantial Evidence Standard

¶ 12. The Department determined that the evidence relevant to the incorporation of the proposed Village of Powers Lake demonstrated a lack of homogeneity, compactness and a reasonably developed community center and therefore the proposed village did not fulfill the requirements set forth in WIS. STAT. § 66.016(1)(a). The petitioners dispute the Department's findings of fact.

¶ 13. In reviewing the Department's findings, we employ the "substantial evidence" standard. Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. An agency's decision may be set aside by a reviewing court only when, upon examination of the entire record, the evidence, including the inferences therefrom, is such that a reasonable person could not have reached the decision from the evidence and its inferences. *Sea View Estates*, 223 Wis. 2d at 148.

¶ 14. The Department's determination was extremely thorough, addressing in detail its findings with respect to each aspect of WIS. STAT. § 66.016(1)(a). We set forth below the Department's findings with respect to the petition's shortcomings.

¶ 15. With respect to transportation, the Department noted that "[t]ransportation systems are an important indication of compactness and homogeneity." In examining the street and highway system in the pro-

posed village area, it found that the proposed village's roadways do not readily connect the commercial center to residential developments in its southern portion and that these residential areas are more connected to the commercial and cultural opportunities of the neighboring communities of Twin Lakes and Genoa City. Significantly, it found that "the road system is geared more towards linking the area to external locations than it is to provide internal movement. In fact, the roads seem designed to prevent internal travel." In support of its finding, the Department cited to its observations that some internal roads are very narrow and the gravel surface is washed out and that there are no trespassing signs throughout subdivisions warning that the roads are not public. The Department concluded that the proposed village's transportation system lacked homogeneity and compactness.

¶ 16. In addition, based on information obtained from the Kenosha County Department of Planning and Development and the town of Wheatland clerk, the Department noted that building trends continue to move away from commercial development toward single-family residences. Due to the lack of commercial employment opportunities other than seasonal opportunities relating to taverns, restaurants and recreation, the Department made the inevitable deduction that it is necessary for most full-time residents to travel outside of the proposed village area to seek employment. Thus, the Department concluded that "employment patterns do not support homogeneity or compactness requirements."

¶ 17. Next, the Department devotes a large part of its written determination to the shopping and social customs of the proposed village. The Department found that the primary land use in the proposed village is

861.

overwhelmingly residential. There is no definite shopping area and there is only one church which does not operate during the winter months. While there are taverns, restaurants and resort businesses such as boat rentals or sales, the Department found that there are no businesses which attempt to meet the day-to-day needs of the residents such as grocery stores, auto repair shops, banks, professional offices, pharmacies, medical clinics or barber shops. While the petitioners argue that there is a tavern which meets the day-to-day needs of the residents by carrying a limited stock of food items in its cooler, the Department found that the tavern does not stock nearly enough food to meet the daily needs of the proposed village residents.[4] In sum, the Department determined that the proposed village is "a group of neighborhoods or subdivisions on three different lakes with no shopping area which can satisfy the daily needs of its residents."

¶ 18. The Department also found a "lack of social cohesion across the proposed village area." Although it identified several social groups, it found that most of the social organizations "have unknown memberships or memberships so low they might be more appropriately considered as gatherings of friends and neighbors." In addition, it found that the memberships of many of the organizations in the proposed village are

---

[4] Several residents testified that they pick up an item on occasion but do their regular shopping in neighboring areas. For example, one of the residents in favor of incorporation testified before the Department that he does his grocery shopping "elsewhere" because of the fine facilities offered. He stated, "There used to be a grocery store in . . . Powers Lake. Unfortunately, it is now a multi-family house. . . . In this day and age, I don't think [a grocery store] could support itself because of the multiplicity of supermarkets we have [in neighboring areas]."

comprised heavily of out-of-town residents. Although the petitioners argued that the lake and lakeshores provide a focal point for social interaction, the Department disagreed, finding that the lakeshores are almost entirely privately owned, forcing many area residents to seek social and recreational opportunities elsewhere.

¶ 19. In looking to other social outlets in the proposed village, the Department noted the lack of schools and churches in the proposed village. It noted that the proposed village does not have any schools within its boundaries but would include portions of three high school districts and three elementary school districts. It concluded that "the mere fact that students and parents are pulled in three separate directions for education reflects on the disparity and fragmentation of social customs in the area." Because the church is seasonal in operation, the Department concluded that residents who worship regularly must do so outside of the proposed village. Without the opportunity for social activities that often attach to schools and churches, the Department concluded that "these social and cultural ties must lie primarily elsewhere."

¶ 20. Finally, the Department considered the requirement that a proposed village have a "reasonably developed community center." WIS. STAT. § 66.016(1)(a). It rejected the petitioners' arguments that Powers Lake itself is the most important focal point of the area and forms a reasonably developed community center. Paragraph (1)(a) specifically provides that the "community center" should include some or all of the following features—"retail stores, churches, post office, telecommunications exchange and similar centers of community activity." The Department determined that the question is whether any of the lakeshores in the proposed village could constitute a community center.

Again, because the lakeshore areas are in large part privately owned, the Department determined that they did not constitute a community center.

¶ 21. While it is undisputed that the proposed village center has a post office, taverns and a seasonal church, the Department did not agree with the petitioners that the post office and taverns are well-established community meeting places. It observed that permanent residents would not be likely to frequent the post office because most would have home delivery. With respect to the taverns, the Department found these to cater more to recreational or seasonal visitors than permanent residents and that they did not provide goods necessary to meet the residents' daily needs.[5]

¶ 22. In sum, the Department found that "[t]he proffered community center falls short in almost every way. There is simply no way that this area can meet the daily needs of the residents. Development along [the proposed village center] is mainly restaurant/bars. It should not be otherwise characterized so as to meet the requirements of [Wis. Stat.] § 66.016(1)(a)."

¶ 23. In reviewing the Department's decision, we have examined the evidence presented at the May 12 hearing, including a report submitted by the petitioners that evaluates the proposed incorporation,[6] and the

_____

[5] We note that the Department considered the petitioners' evidence that at least ten new businesses had developed in the proposed village area since 1991. However, none of the businesses were located in the proposed "community center."

[6] The report, dated May 12, 1998, was prepared by Patrick J. Meehan of Meehan & Company, Inc., which specializes in planning, zoning and design. The report is entitled, "An Evaluation of the Proposed Incorporation of the Powers Lake Community into a 'Village' under Wisconsin Statutes Section 66.016."

hearing transcript. While the petitioners maintain that there was testimony to support a finding of homogeneity, compactness and a reasonably developed community center, there was ample testimony and evidence to the contrary. Based on our review of the entire record, we conclude that there is substantial evidence, in addition to that evidence discussed above, which supports the Department's determination regarding the relevant characteristics of the proposed village pursuant to WIS. STAT. § 66.016(1)(a).

### 4. The Application of WIS. STAT. § 66.016(1)(a)

¶ 24. With respect to the Department's application of the incorporation statute, the parties stipulate that the dispute in this case is limited to the requirements of WIS. STAT. § 66.016(1)(a).

¶ 25. The petitioners contend that the provision requiring the proposed village to be reasonably homogenous and compact should be applied with flexibility and with the consideration of "societal changes wrought by interstate highways, the internet, and warehouse shopping." In so arguing, the petitioners rely on *Gotfredson*, in which the court held that it is not essential that a proposed village have within its boundaries a village store or school.[7] *Gotfredson*, 7 Wis. 2d at 403. The petitioners' reliance on *Gotfredson* is misplaced.

---

[7] The petitioners' argument echoes the supreme court's observation in *Gotfredson*. There the court noted,

> While it may have been usual and customary fifty years ago, or twenty years ago, for a community to grow around the market or place of employment, school, church, and perhaps the village blacksmith, due to limitations in the means of transportation, this is not so today. Decentralization is the trend of today. Areas are developing exclusively devoted to residential purposes. The construction of superhighways and the technical improvement in the

*Gotfredson* was decided prior to the enactment of the community characteristic standards of Wɪs. Sᴛᴀᴛ. § 66.016(1)(a) in 1959 and was addressing the "village-in-fact" standard. While *Gotfredson* is relevant to the history of incorporation, it does not bear upon the application of current law.

¶ 26. Rather, it is evident from the Department's written determination that it considered many incorporation decisions made after 1959 as providing guidance on the issue of homogeneity, compactness and a reasonably developed community center. It found that these decisions supported its conclusion that the proposed village fails to meet the requirements of Wɪs. Sᴛᴀᴛ. § 66.016(1)(a). We similarly conclude that these decisions support the Department's application of § 66.016(1)(a) in this case.

¶ 27. In *Town of Pleasant Prairie v. Johnson*, 34 Wis. 2d 8, 148 N.W.2d 27 (1967), the department found that the proposed village failed to meet the requirements of Wɪs. Sᴛᴀᴛ. § 66.016. The department found that the proposed village's transportation system detracted from the proposed village's compactness and homogeneity as it facilitated the functioning of the area as a part of a neighboring area. *Town of Pleasant Prairie*, 34 Wis. 2d at 13. Here, the Department similarly found that the proposed village's transportation system was "externally" focused thus contributing to a finding of a lack of homogeneity and compactness.

¶ 28. Later, in *Town of Pleasant Prairie v. Dep't of Local Affairs & Dev.*, 113 Wis. 2d 327, 333, 334 N.W.2d

manufacture of automobiles have made it possible for families to live in one community, be employed in another, and seek recreation in still others.

*Gotfredson*, 7 Wis. 2d at 403.

893 (1983), the court observed that the requirement of reasonable homogeneity "shows a legislative concern that the area to be incorporated have a reasonably consistent and uniform composition. The standards set forth in sec. 66.016(1), STATS., indicate that the entire area be a community, that it have common interests that are internally shared." As applied to this case, the Department reasonably concluded that the proposed village failed to meet the requirements of homogeneity.

¶ 29. With respect to the requirement of a reasonably developed community center, the Department noted in its determination that the meaning of "community center" and the application of that requirement by the Department have previously been examined by the courts.

¶ 30. In *Schmidt v. Dep't of Local Affairs & Dev.*, 39 Wis. 2d 46, 62, 158 N.W.2d 306 (1968), the court upheld the department's determination based on the department's findings quoted below:

> Analysis . . . reveals that there is no dominant community center in the area proposed to be incorporated which might serve as a focal point for the Town's social and business activities. While there are some such facilities in existence, such as two post offices, firehouses, grocery stores, taverns, service stations, and small retail stores; there are no banks, professional offices, medical facilities, pharmacies, or modern shopping centers.

> . . . .

> Considering, then, the characteristics of the territory, and upon finding that development in the area proposed to be incorporated is scattered, that the proposed boundaries are irregularly shaped, that it lies in two separate drainage areas, that it lies in two high

school districts, that a full range of community facilities such as banks, medical services and modern shopping centers are not available within any part of the area that could be described as its community center, it is the opinion of the Director that the entire territory of the proposed village is not reasonably homogenous and compact.

¶ 31. Similarly, in *Scharping v. Johnson*, 32 Wis. 2d 383, 392, 145 N.W.2d 691 (1966), the court cited the following findings made by the department:

> Also of concern is the requirement that the area have a reasonably developed community center which is the focal point for the common social, economic and cultural ties that bind the community. It is the opinion of the Director that the crossroads facilities . . . do not constitute a reasonably developed community center. The fact that the only church in the core is now empty and unused would suggest that community activities occur elsewhere. There is no facility for public gatherings, no park, no town square or municipal center, no bank, no telephone exchange. The crossroads development which exists is too limited in facilities to function effectively as a community center.

Again, the court upheld the department's determination.

¶ 32. In reviewing the past determinations of the department and the courts, the Department determined that the proposed Village of Powers Lake failed to meet the requirements of homogeneity, compactness and a reasonably developed community center. The Department's determination is reasonable and consistent with prior determinations.

¶ 33. Finally, the petitioners devote much of their brief reviewing those requirements of Wis.

Stat. § 66.016 that they did meet and emphasizing the benefits of incorporation for the proposed village area. Nevertheless, the Department determined that the petition failed to meet the minimum requirements of § 66.016(1)(a). It is well established that in order to qualify for incorporation, an area must meet all six statutory requirements set forth in § 66.016(1) and (2). *Redford v. DOD*, 186 Wis. 2d 515, 521, 521 N.W.2d 453 (Ct. App. 1994). The department may dismiss an incorporation petition if it determines that one of the six requirements was not met. *Id.* at 523.

¶ 34. The Department acknowledged that the incorporation of the proposed village would resolve problems related to the fact that the area is bisected by the towns of Randall, Bloomfield and Wheatland and by Kenosha and Walworth counties. However, whether an incorporation would benefit the proposed village area is not the standard adopted by our legislature and set forth in Wis. Stat. § 66.016. We reject the petitioners' request that we depart from existing case law and the explicit statutory requirements of incorporation. We further note that the petitioners' concerns that the current standards do not address present day realities are better addressed to the legislature.

## CONCLUSION

¶ 35. We conclude that the Department's findings with respect to the requirements of Wis. Stat. § 66.016(1)(a)—homogeneity, compactness and a reasonably developed community center—are supported by substantial evidence in the record. Giving great weight to the Department's interpretation and application of § 66.016(1)(a), we uphold the Department's determination that the proposed village

failed to meet the minimum requirements of incorporation as set forth in § 66.016(1)(a).

*By the Court.*—Judgment affirmed.